THE CITY OF ST. PAUL, Plaintiff in Error, *vs.* DAVID MERRITT, Defendant in Error.

### ERROR TO THE DISTRICT COURT OF RAMSEY COUNTY.

The City of St. Paul, in 1858, levied a tax of $800 against the Defendant for city purposes, on account of money loaned by the Defendant in said city, and in different parts of the State of Minnesota, and made payable in St. Paul. The Defendant was not a resident of the city or of the State during that year. *Held,* that the assessors had no authority to assess this species of personal property of a non-resident, and that the tax was illegal.

Where the assessors have no authority to enter the name of a person upon the assessment roll or to levy a tax against his property, a party is not estopped from contesting the validity of the tax, in an action brought to recover the same, by failing to appear before the board of equalization of taxes, and objecting to the tax, as required by the provisions of the city charter.

Points and Authorities of Plaintiff in Error.

I.—This question involves the construction of section one, chapter 8, of said consolidated act, *Laws of* 1858, *p.* 37. It

provides " that all property, real or personal, within the city, except such as may be exempt by the laws of this State, shall be subject to taxation for the support of the city government." *See sec.* 3, *p.* 38.

This was not property exempt by law; on the contrary, such property is made taxable under the constitution. *Sec.* 3–4, *art.* 9, *State Const.; Porter vs. Heyward*, 6 *Vt.*, 374; *Catlin vs. Hall*, 21 *Vt.*, 157.

The property being invested and payable in the city of St. Paul, had its situs there as much as such personal property is capable of having a situs. *Catlin vs. Hall*, 21 *Vt.*, 157. And the act provides that personal property within the city shall be liable to taxation, &c.

II.—The Defendant had his remedy under the charter, to object to the assessment, while it does not appear he did so, nor does he show any excuse for not so doing. *Consolidated Act, sec.* 3, *chap.* 8, *Laws of* 1858, *p.* 38; *Orlome vs. Dowers*, 6 *Pick.*, 98; *Little vs. Greenleaf*, 7 *Mass.*, 239.

Now in this case the Plaintiff put in evidence on trial, a transcript of the assessment, under *sec.* 20, *chap.* 10, *of said act, Laws of* 1858, *p.* 49, which made out a *prima facie* case. The Defendant neither averred in his defence want of notice, nor any other reason for not seeking his remedy under the charter, nor did he introduce any evidence upon that point; and his own evidence showed that he was then actually sojourning and staying in St. Paul. And see *sec.* 2, *chap.* 8 *of said act, Laws of* 1858, *p.* 38.

III.—The Plaintiff's own evidence showed that he had a sufficient domicil in St. Paul for the purpose of taxation. *Greene vs. Greene*, 11 *Pick.*, 410; *Putnam vs. Johnson*, 10 *Mass.*, 488; *Cambridge vs. Charleston*, 13 *Mass.*, 50.

Points and Authorities for Defendant in Error.

I.—The finding of the Court upon the question of fact in the case is conclusive, and not the subject of review. His residence or domicil was in Carmel, New York, and he could have but one for one purpose at the same time. 5 *Barb.*, 505;

10 *Pick.*, 77; 1 *Met.*, 242–250; 1 *Kent*, 78–80; 23 *Pick.*, 170; 10 *Mass.*, 488.

II.—The Defendant being a non-resident of the State was not liable to taxation on account of his personal property, of the description mentioned in the complaint, to wit: money loaned and at interest. The assessor had no jurisdiction in the premises. The tax in this case is one in *personam.* The property had no locality, but followed the owner. *The People Ex rel. Mygatt vs. Supervisors of Chenango Co.*, 1 *Kern.*, 563; 15 *N. Y. R.*, 316; 1 *Rev. Stat. N. Y.*, *4th Ed.*, *p.* 714, *sec.* 1 & 3, & *p.* 715, *title I, sec.* 5 ; *Pub. Stat. Minn.*, *p.* 229 *to* 231; *chap.* 8, *chap.* 6, *Sess. Laws* 1854, *p.* 32; 12 *Pick*, 10; 9 *Sange*, 62; 1 *Met.* 250–242; 12 *Met.* 178; 9 *Yerg.*, 490; *McCullough vs. State of Maryland*, 4 *Wheat.*, 316 ; 1 *Kent*, 425–6–7.

III.—The taxing power under which the city acts, was conferred by the Territorial Legislature, *chap.* 8, *chap.* 6, *Sess. Laws*, 1854, *p.* 32. Conceding that the Legislature had the right, under the organic act, of conferring upon the city the power of taxing debt due non residents, of which quere (?)—it is clear from an examination of the provisions relating to that subject, contained in the charter, (*see said chap.* 8 *and the provisions of the Rev. Stats., relating to taxation, Comp. Stats., p.* 229–30–31,) that no such power was conferred, or intended to be. In reference to general taxation, the Legislature have never exercised any such power, (*secs.* 1 *and* 9 *to* 14 *inclusive, Pub. Stats., p.* 219 *to* 231,) and it is not to be assumed, in the absence of language clearly indicating such intention, that they intended to confer upon the city the power of taxing a kind of personal property which they have never sought to tax for general purposes.

*a.* Assuming the existence of the power claimed in this case, a resident of Hennepin county, or of the city of Winona, would be liable to pay a double tax upon the same property, provided he made any of his debts payable in St. Paul, which is not only absurd but illegal. 12 *Pick.*, 7; 17 *id.*, 231 ; 4 *Mass.*, 534.

H. J. HORN, & S. M. FLINT, Counsel for Plaintiff in Error.

F. R. E. CORNELL, Counsel for Defendant in Error.

*By the Court*—ATWATER, J.—The city of St. Paul brought an action against the Defendant to recover the sum of $800, assessed as a city tax against his personal property. The action was tried before the Hon. C. E. Vanderburgh, a jury trial having been waived, and the facts found by the Court, (so far as it is necessary to state them for a proper understanding of the case), were substantially as follows :

That on the 20th day of July, 1858, the city of St. Paul assessed $50,000 personal property against the Defendant, and levied a tax on the same for city and ward purposes to the amount of $800. That the Defendant was not at the time of such assessment, nor at any time during the year 1858, a resident of said city nor of the State of Minnesota. That Defendant had, during the year 1858, and at the time of such levy, money at interest in St. Paul, in the county of Ramsey, and in other parts of the State, secured by mortgage, payable in said city.

Upon the foregoing facts the Court found that Defendant was not taxable by said city, that the assessment and levy against him was illegal, and that Defendant was entitled to judgment for costs. From the judgment entered upon this decision the Plaintiff brings its writ of error.

Section 3 of article 9 of the Constitution, provides that " laws shall be passed taxing all moneys, credits, investments in bonds, stocks, joint stock companies or otherwise, and also all real and personal property, according to its true value in money." This provision is perhaps broad enough to authorize the legislature to levy a tax even upon the personal property, or rather upon the moneys and credits of non-residents, and it will be necessary to examine the statute provisions to see whether the legislature has ever exercised, or attempted to exercise the authority to tax the money of non-residents.

*Chap. 9, Comp. Stats., p.* 229, contains the general provisions in force in this State at the time in question, with regard to the assessment of property and levy of taxes thereon. Section 5 of said chapter provides that " all lands shall be assessed in the district in which the same shall lie, and every person shall be assessed in the district where he resides, when the

assessment is made for all real and personal property then owned by him within such district." To the same effect is *sec.* 2, *art.* 17, *chap.* 8, *Comp. Stats., p.* 198, (*Township Organization Act of* 1858.)

By section 9 of said chapter 9, it is also provided that " every person except as provided in the succeeding section, shall be assessed in the district in which he resides, when the assessment is made for all taxable personal estate owned by him, including all such personal estate in his possession or under his control, as trustee, guardian, executor or administrator ; and where there are two or more persons jointly in possession, or having the control of any such property in trust, the same may be assessed to either or all such persons, but it shall be assessed in the district where the same shall lie, *if either of such persons reside in such district.*"

And by section 10, it is further provided that " all goods, wares and merchandise, kept for sale in this territory ; all stock employed in any of the mechanic arts, and all capital and machinery employed in any branch of manufactures, or other business, within this territory, owned by a corporation out of this territory, or by any person, whether residing in or out of the territory, shall be taxable in the district where the same may be, either to the owners thereof, or to the person who shall have charge of, or be in possession of the same."

Now, these provisions expressly direct that each person shall be assessed " in the district in which he resides," when the assessment is made for all taxable personal estate owned by him, and no authority is found for taxing him elsewhere, so far as moneys and credits are concerned. It will not, of course, be contended that any tax can be levied without express provision of law therefor. The Legislature has not seen fit to provide for the assessment of any kind of personal property, except that specified in section 10 above quoted, elsewhere than in the town or district in which the person to be taxed resides. The direction as to where personal property shall be assessed is repeated in more than one section ; and even personal property held in trust, is not permitted to be assessed in the district where the same shall lie, unless the trustees, executors, &c., or one of them reside in such dis-

trict. And the exception to the rule which is stated in the enumeration of certain kinds of personal property in section 10, which may be taxed in the district where the same may be, strengthens the belief that the omission of other kinds was not accidental, but *ex industria*. For the maxim here applies *expressio unius, exclusio ulterius.* The act of 1860, (*Session Laws* 1860, *p.* 11,) in specifying what property is taxable, enumerates among other kinds, " moneys, credits, investments in bonds, stocks, joint stock companies or otherwise, *of persons residing herein.*"

We think therefore the inference is clear that under the general laws of this state regulating the assessment and taxation of personal property, no personal property of non-residents is subject to assessment and taxation except as specified in section 10 above quoted.

The statute of New York is in substance the same as ours with regard to the extent to which property is liable to taxation, declaring that all real and personal property shall be subject to be taxed. *Rev. Stat. N. Y.,* 4*th Ed., vol.* 1, *p.* 714, *Title* 1, *sections* 1 *and* 3. And so too with reference to the place where personal property shall be assessed. *Id., Title* II, *sec.* 5, *p.* 715. Under these statutes, the decisions of the Courts of that state have uniformly been, that personal property could only be assessed against an individual, in the town or ward where he resides. *The People ex rel. Mygatt vs. Supervisors Chenango Co.,* 1 *Ker.,* 563; 15 *N. Y. Rep.,* 316; 9 *Paige,* 62. To the same effect have been the decisions in Massachusetts. 12 *Pick.,* 10; 1 *Met.,* 242, 250; 12 *Met.,* 178.

We come now to examine that provision in the charter of the city of St. Paul, under which it is sought to sustain this action. Section 1 of chapter 8 of the Charter, provides that " all property, real or personal, within the city, except such as may be exempt by the laws of this state, shall be subject to taxation for the support of the city government, and payment of its debts and liabilities; and the same shall be assessed in the manner hereinafter provided ; the assessors elected under this act shall have and possess the same powers that are, or may be conferred upon township or county assessors, except so far as they may be altered by this act."

Was it the intent of the legislature in the use of this language, to subject property to taxation for the support of the city government and payment of its debts and liabilities, which is not liable to taxation for general purposes? I think not. The language employed in the first clause above quoted, to wit, " all property real or personal, within the city, except such as may be exempt by the laws of this state, shall be subject to taxation," is not more comprehensive than that used in *sec.* 1 *of chap.* 9, *Comp. Stat.*, which declares, that, " all property, real and personal, within the territory, not expressly exempted therefrom, shall be subject to taxation in the manner provided by law." It is true, the charter does not provide that each person shall be assessed in the ward in which he resides. But there are other provisions which indicate that the legislature did not propose to grant the corporation unusual privileges in the matter of taxation. If the views above expressed of the tax laws in force in 1858 are correct, the money of non-residents in this State was exempt from taxation. Not expressly exempted as in the list of enumerated articles, but exempt by reason of no provision being made to subject it to taxation. And as we hold it was, under the general law, the intent of the legislature to exempt such personal property of non-residents from taxation, so here we think the fair construction of the language is the same as though it read, "except such as may not be liable to taxation by the laws of this State." But again it is declared, that "the assessors elected under this act shall have and possess the same powers that are, or may be conferred upon township or county assessors, except so far as they may be altered by this act." Now, township or county assessors, had no power to assess the moneys of non-residents; and the city charter has not in terms certainly conferred this power, upon assessors elected under its provisions.

But further it is provided by section 2 of the same chapter, that "for the purpose of facilitating the assessments of personal property, each assessor shall be furnished by the city clerk with suitable blanks or lists, specifying the different kinds of personal property subject to taxation, in such form and under such regulations as the common council may pre-

scribe; and such blanks or lists shall be left by the assessor with each owner of personal property subject to taxation, who shall fill up the blanks," &c. This provision manifestly presupposes the owner to reside in the city, as in many cases it would be otherwise impossible to comply with it, no provision being made except for a personal service of the list. Further provisions in section 3 are found, with reference to hearing objections to assessments, providing that ten days notice by publication shall be given, &c., which would be wholly ineffectual in most cases except for residents.

It is thus we think apparent that not only is this species of personal property of non-residents of the city of Saint Paul, not subject to assessment by the terms of the city charter, but the provisions of that instrument lead strongly to the conclusion that it was not the intent of the legislature to subject such property to taxation for the benefit of the city. But if there were still doubts upon the question, there is another consideration of much weight, which strongly shows the absurdity, or at least the injustice which would often result from the construction claimed by the Plaintiff in Error. It may safely be assumed that the law does not intend to tax the property of the citizen more than once in the same year, for the payment of county or city expenses. And yet the opposite of this would often be the result of the construction contended for by the counsel for the city. By the general tax law, a resident of Winona would be liable to taxation on his personal property in that city and county. And yet if he happened to have a sum of money on deposit in a bank in St. Paul, at the time of making out the assessment roll in that city, it would there be liable to be assessed and taxed as being "within the city." If such power were in fact possessed by the corporation, its exercise would scarcely tend more to promote its own interests, than those of the individual who might suffer the infliction of the double tax, since its effect would be to drive much business and capital from the city, from which great advantage is derived.

Some evidence was taken on the trial tending to show that the Defendant was taxed in Carmel, N. Y., where he claimed his residence. Upon this point however, the finding of the

Court is silent, nor do we deem the fact material in determining the proper construction of the law applicable to the case. As a matter of fact however, by the laws of that state, the citizen is taxable on personal property in the town in which he resides.

It is claimed by the counsel for the Plaintiff in Error, that though the assessment were improperly made, yet the Defendant neglecting to file and return the "blank list" furnished by the assessor as required by section 2, above referred to, or to make the necessary objections to such assessment required by law, is estopped from denying the legality of such assessment. This view we think incorrect. If the failure to make the objections to the assessment specified in the charter can ever work the estoppel claimed, it can only be where the assessors had original authority to make the assessment, but have erred in the exercise of their power by an over estimate or some mistake of this nature. Here their whole action was illegal *ab initio*. They had no authority to assess the Defendant at all, to enter his name upon the roll, or require him to appear for the purpose of making objections to the assessment. He may contest the payment of the tax at any time, and interpose his defence whenever an action is brought to collect it.

The judgment below is affirmed.