THE BOARD OF SUPERVISORS OF TAZEWELL COUNTY *et al.*

*v.*

JOHN DAVENPORT.

40  197
82a 121
40  197
f87a 286
40  197
e189 4236
d189 4237
d189 6237

1. TAXING POWER OF THE STATE—*who subject thereto.* It is not necessary that a person, to be amenable to the taxing power of the State, should be a citizen of the State, or domiciled within it.

2. Nor does the revenue law place the liability to taxation upon the ground of citizenship.

3. SAME—*relative meaning of the terms "resident" and "inhabitant."* The terms "resident" and "inhabitant" are not synonymous. The term "inhabitant" implies a more fixed and permanent abode than the term "resident," and frequently imports many privileges and duties, which a *mere* resident could not claim or be subject to. There is a marked difference in the two terms.

4. SAME—*of a "residence" as distinguished from a "domicile."* A person may have a home or domicile in one State and, at the same time, a residence in another State.

5. TAXATION OF MONEYS AND CREDITS—*who is a resident of this State, within the meaning of our revenue law.* A "resident" of a place is one who dwells in that place for some continuance of time, for business or other purposes.

6. While the transient visit of a person for a time at a place may not make him a resident while there, yet, if he has a regular and permanent business there, such as the loaning of money for himself and others, and remains there continuously for a time sufficiently extended to enable him to transact that business, which is his only known business or occupation, that will be regarded as his place of residence, so as to subject his own moneys and credits, employed

in such business, and also the moneys and credits of other persons who may reside out of this State, but which are used and controlled by him as their agent, to taxation at such place, if in this State, under the act of 1853, amendatory of the revenue law, which provides that all moneys and credits of persons residing in this State, *or used or controlled* by persons residing in this State, shall be entered on the list of taxable property ; and this, although he may at the same time have a home or domicile in another State, where he also resides during certain limited portions of the year.

WRIT OF ERROR to the Circuit Court of McLean county; the Hon. JOHN M. SCOTT, Judge, presiding.

This was a suit in chancery commenced in February, 1864, in the Circuit Court of Tazewell county, by John Davenport against the board of supervisors of Tazewell county and Hugh K. Alexander; and the cause was subsequently removed into the Circuit Court of McLean county, upon change of venue.

The bill was to enjoin the board of supervisors of Tazewell county, and Hugh K. Alexander, the collector of taxes for the town and city of Pekin, in said county, from the collection of certain taxes assessed by the assessor of Pekin, for the year A. D. 1863, upon defendant in error personally and as agent for Ira Davenport, Charles Davenport and Martin Adsit.

An injunction was granted, which, upon the hearing, the Circuit Court made perpetual. The defendants thereupon sued out this writ of error.

The only question considered by the court is, whether John Davenport was a resident of this State, within the meaning of our revenue law. The facts in the case, upon which this question depends, are fully set forth in the opinion of the court.

Messrs. COHRS & IRELAND and Messrs. COOPER & Moss, for the plaintiffs in error.

Mr. H. M. WEAD, for the defendant in error.

Mr. JUSTICE BREESE delivered the opinion of the Court:

Two questions are presented by this record: First, has a court of chancery jurisdiction of the subject-matter of the

bill of complaint, and, second, was the complainant therein a resident of this State, or the property which he controlled as agent, or which he held in his own right, liable to taxation in this State under our revenue laws.

The first question is of no importance if the second is decided against the defendant in error, and to that we will devote our attention.

Very able arguments have been presented on both sides of this question, and we have examined them and deliberated upon them with studious care.

The defendant, it appears, was assessed personally, and as agent for Ira Davenport, Charles Davenport and Martin Adsit, upon money on hand and money loaned.

He objected to the assessment, on the ground that he was not a resident of this State, and appealed to the board of supervisors. The board confirmed the assessment, whereupon the defendant in error filed a bill in chancery to restrain the collection of the assessment. The Circuit Court made the injunction perpetual.

The important question presented is, was complainant a resident of this State within the meaning of our revenue laws?

Those laws provide, that all property, real and personal, in this State, shall be liable to taxation, subject to the exceptions stated. Scates' Comp. 987. " That all property real or personal in this State, all moneys, credits, investments in bonds, of persons residing in this State, *or used or controlled* by persons residing in this State, shall be entered on the list of taxable property in the manner prescribed in this act." Id. 1046.

The term " money " or " moneys," wherever used in this act, shall be held to mean gold or silver coin and bank-notes in actual possession, and every deposit which the person owning, holding in trust, or having the beneficial interest therein, is entitled to withdraw in money on demand. The term " credits " shall be held to mean and include every claim or demand for money, labor, or other valuable thing due, or to become due, or every annuity, or sum of money receivable at stated periods, and all money invested in property of any kind which is secured

by deed, mortgage or otherwise, which the person, holding such deed or mortgage or evidence of claim, is bound by any lease, contract or agreement, to reconvey, release, or assign upon the payment of any specific sum or sums. Id. 1047, Act of 1853.

By section four of the same act it is provided, that every person of full age and sound mind, not a married woman, shall list the real property of which he is the owner, situate in the town or district in which he resides, the personal property of which he is the owner, all moneys in his possession, money loaned or invested, and all other property of which he is the owner; and he shall also list all moneys invested, loaned or otherwise *controlled* by him as the agent or attorney, or on account of any other person or persons, company or corporation whatsoever, and all moneys subject to his order, check or draft, and credits due from or owing by any person or persons, body corporate or politic, whether in or out of said county. And by the same section it is provided, that every person required to list property on behalf of others, by the provisions of this act, shall list it in the same county, town or district in which he would be required to list it, if such property were his own. Id. 1048, 1049.

The proof shows that, in February, 1859, the defendant came to the city of Pekin, in the county of Tazewell, to loan money upon real estate, not only for himself, but as agent for his father, Ira Davenport, and his uncle, Charles Davenport, and one Martin Adsit, and so continued to loan money up to the commencement of this suit. These loans were made as permanent investments, and principal and interest, when paid, were re-invested on the same kind of security. The deeds, in all cases, were recorded in the proper office in Tazewell county, and in other counties in which the security was situated. While engaged in this business, he made the city of Pekin his headquarters; it was his post-office address. The banking-house there of Rupert & Co. was his place of doing business generally, but sometimes in the office of Mr. C. Young. When Rupert & Co. quit business, defendant kept his office and did business with Leonard & Co. and Greigg & Co., in the same city

—had a table and desk there for the transaction of his business, and kept his valuable papers, and sometimes money, in the safe of their bank. When his father was there he, also, used this office and safe, and defendant carried a duplicate key of the office. When defendant went east he left the papers in relation to loans not completed, and notes maturing during his absence, in the safe, and sometimes in the care of Rupert & Co. When any changes of payments or collections were to be made, applications for that purpose were made to defendant. When papers were forwarded east, they were not returned to Pekin except for collection or payment, though extensions of time of payment would be granted by defendant without the papers being there. Defendant had possession of securities for loans made there from November, 1862, to July, 1863. When the principal of loans was paid, it was generally at once re-invested in loans made by him. He is a single man, of mature age, and has no other business but to attend to these loans. Money collected on them was seldom remitted east if it could be re-invested here —only in a few instances. Notes taken by him in making loans were mostly made payable in Pekin, and notes made payable in other places were paid at Pekin. Since 1859 large amounts were deposited with Rupert & Co. to the credit of defendant. The father of defendant said, in 1860, when at Pekin, that loaning money there was a good business, and that defendant should follow it ; that he would let all the money he had loaned there remain on loan, and he would get more and send to defendant to loan. Charles Davenport also sent money to defendant to loan as the defendant would write for it, and they both seemed disposed to make it a permanent business, and they always extended or renewed good loans. Adsit lived in Chicago, and had been a partner in business with defendant's father, and owed him large amounts, and, as fast as payments were made by him on this indebtedness, the money would be sent to defendant, and be invested in loans. Adsit was often made trustee in the trust-deeds for Ira and Charles. This business was continued from July, 1858, at which time the father commenced it, up to July, 1863, when it ceased,

because defendant was required to give in a list of these loans for assessment. The largest amount, and most money, was loaned in Tazewell county, but all loans were perfected, money advanced and deeds delivered at Pekin, and kept in the bank safe of Rupert & Co. When defendant first came to Pekin, in 1859, he brought letters from his father, Ira, to Rupert & Co., stating that he came to make loans and collect those matured, and desired that firm to assist and instruct him in doing it safely. This was all defendant did while in Pekin, and he gave his whole attention to it. He stayed from one to four months, never leaving while he had money on hand, and remaining away only during the hot and sickly season of the year, and then returning. While in this State he resided in Pekin. After he was assessed on these loans he left, and required parties who had business with him to write to him at Bath, New York, and prohibited Greigg & Co., the successors of Rupert & Co., from receiving money on any loans. He changed the place of transacting business from Pekin, in this State, to Bath, in the State of New York. While in Pekin he had charge and control of the notes and securities taken for loans.

In July, 1863, the loans amounted, in the counties of Logan, Tazewell and Mason, to more than $250,000, all, or nearly all of which had been negotiated at Pekin, and were at an interest of ten per cent. per annum besides a commission to defendant ranging from two and one-half to five per cent. payable by the borrower over and above the interest. Defendant commenced this business in February, 1859, and carried it on to July, 1863. He now insists, although doing this profitable and extensive business, under the protection of the laws of this State, he is not amenable to the revenue laws of the State—that he was a mere visitor and temporary sojourner having his residence in the State of New York, to whose authorities he was liable for these taxes and not to this State.

There is no allegation in the bill of complaint, that the taxes have been paid on those moneys, to the State in which he claims to be a resident.

It is not necessary that a person, to be amenable to the tax-ing power of the State, should be a citizen of the State, or domiciled within it. The question is narrowed down to this, on the proof, did he have a regular and permanent business here and did he remain here, and continuously, for a time suffi-ciently extended to enable him to transact that business? Where were his business operations conducted? Had he a fixed and known place of business? A well known post-office address—an office provided with desk and safe? And was his business designed to be of a permanent character? He remained at Pekin for months at a time, only leaving at the approach of the hot and sickly season, and then leaving an agent to attend to his business until his return, and returning regu-larly. The only known business or occupation defendant had, was this business of loaning money at Pekin, to which he devoted his undivided attention. These loans were from two to five years, the longer ones being preferred, showing by that fact, it was designed the business should be of a permanent nature. So successfully was it carried on, that in less than four years, the loans amounted to more than $250,000, secured by real estate, the title-deeds of which were recorded in offices and by officers provided by the State, and the whole business conducted from year to year, under the secure panoply of our laws. Although the deeds may have been sent to New York, they were of but trifling value after they were recorded—the record of them was here, within the jurisdiction of this State, and the money they represented, also within the same jurisdiction.

The testimony offered by defendant shows most clearly that his domicile, during all this time, was in the State of New York; that was the home of his father, to which he repaired every year at the approach of the hot season. He was not a minor, but a man of mature years, and unmarried. Now, can a man have a home, a domicile, in one State, and at the same time be a resident of this State? That is the question, and on it much argument and authority have been produced on both sides.

The appellants hold the affirmative, and they have referred to cases supposed to sustain their side.

It is unnecessary to enter into an elaborate disquisition on the meaning of the term " domicile," or specify its several kinds, as the revenue law does not use that term. It will be sufficient to inquire what constitutes a residence within the meaning of our revenue law.

In *Pooler* v. *Maples*, 1 Wend. 65, it was held, that a person residing without the State of New York, though domiciled in that State, was within the meaning of the statute allowing the depositions of non-resident witnesses to be taken. So in *Frost & Dickinson* v. *Brisben*, 19 id. 11, it was held, that a person having his domicile in the State of New York, but who carried on business out of the State, and *personally* superintended it, was not a resident of New York within the meaning of the act to abolish imprisonment for debt, and might accordingly be arrested in that State for a debt arising upon contract. The domicile of a party may be in one State and his actual residence in another. In that case the affidavits showed that the place of business of the defendant was at Milwaukee, in Wisconsin, and that it was personally superintended by the defendant. He commenced business there as a merchant, with the intention to make it his permanent residence, with the mental reservation that his business should be successful. The question was, did his change of mind while continuing in business there, even with a view to close it up, and before closed up and removal, operate as a change of residence? The court say, the answer to this question would depend upon the meaning or legal import of the term *residence* in the connection in which it is used in the statute. The court say, the transient visit of a person for a time at a place, does not make him a resident while there. Something more is necessary to entitle him to that character. There must be a settled, fixed abode, an intention to remain permanently, *at least for a time, for business or other purposes*, to constitute a residence, within the legal meaning of the term. And the court say, whether, therefore, the defendant had so established himself at Milwaukee as to

work a change of his domicile or not, is immaterial; for if we concede he has not, he may still be a resident there. The domicile of a citizen may be in one State or territory, and his actual residence in another.

In the case of *Bartlett* v. *The Mayor, etc., of the City of New York*, 5 Sandford, 44, the complainant had obtained an injunction against the collection of certain taxes on personal property for which he had been assessed, on his allegation that he resided in Westchester county, and engaged in erecting a dwelling-house there, and while it was in process of erection, he and his wife took rooms at a hotel in the city of New York from December, 1849, to about the end of April, 1850, intending, however, to return to Westchester, and to be and remain a resident of that county, and not to be a resident of New York; that he did return to Westchester county about the end of April, 1850, and there remained actually resident until about the first day of December, 1850, when, his dwelling-house being unfinished, he took apartments for the winter at another hotel in the city, but with the same intent to be and continue a resident of Westchester and not of the city. He further stated, that, during all this time, his principal and only place of business was in the first ward of the city of New York. His bill of complaint further stated, that he had presented at the proper time, an affidavit to the assessors that he was not a resident of the city, which was delivered by them to the commissioners of taxes, but the commissioners refused to strike his name from the tax list.

The court refer to the case of *Frost et al.* v. *Brisben, ante,* approvingly, and say that the complaint shows that the complainant's domicile was in Westchester county—his *home* was there—and his residence also, for a little more than half the year, but that is not inconsistent with the fact that his residence was in the city of New York for the remainder of the year. Reference is then made to the definition of residence by Webster, a lexicographer of acknowledged authority, and he defines it to be " the dwelling in a place for some continu-

ance of time," as in *Frost et al.* v. *Brisben,* "for business or other purposes."

The revenue law of New York, in this regard, is the same in substance as our own.

The case of *Douglas* v. *The Mayor, etc., of New York,* 2 Duer, 110, is to the same effect. Douglas in 1850, and for several years before, resided in a hired house in the city of New York during the winter and spring, and at his country seat at Flushing, in Queens county, during the summer and autumn. In the winter of 1850 he was assessed in New York for a tax on his personal estate, and in the summer was assessed for a similar tax in Flushing, which he paid. He resisted the payment of the tax in New York, and filed a bill to restrain its collection. The court held, that, whether the domicile of Douglas was or was not at Flushing, he was a resident of the city of New York, and liable to be taxed as such when the tax for the city was assessed, and his bill was dismissed. The court considered the case identical in principle with that of Bartlett's case, 5 Sandf. 44. Many other cases to the same effect may be found, were it necessary to cite them.

The appellee's counsel contends that the testimony does not show that appellee had any intention of making Pekin his permanent home, but that his domicile was Bath. At this place only could he exercise the privilege of a citizen by voting at popular elections.

This may be so, but the revenue law does not place the liability to taxation upon the ground of citizenship. He also contends that the terms "resident" and "inhabitant" are synonymous, referring to 2 Kent's Com. 576, tenth edition. That edition is not within our reach, but a diligent search of prior editions of that volume has failed to show us this doctrine. In *Roosevelt* v. *Kellogg,* 20 Johns. 211, also cited by appellee, it is so held, but NELSON, Ch. J., in commenting on that case in *Frost et al.* v. *Brisben,* 19 Wend. 13, says, it may be doubted if this position is strictly accurate, as the latter term, "inhabitant," implies a more fixed and permanent abode than the

former, and frequently imports many privileges and duties which a *mere* resident could not claim or be subject to.

In this view of the chief justice we accord, giving it the preference over the definition of Judge PORTER, in the case of *The United States* v. *The Penelope*, 1 Binney, 351, and cited by appellee's counsel. There is a marked difference in the meaning of the terms "resident" and "inhabitant" growing out of their respective rights and duties.

This being so, the other case referred to by counsel, of Wrigley and insolvent debtors, in 4 Wend. 602, can have no bearing, as that case turns upon the fact of *inhabitancy*, not of residence. The case in 8 Wend. 140, is the same case of Wrigley, and turned upon the same point.

The case of *The State* v. *Ross*, 3 Zabriskie (N. J.), 517, is more in point for appellee. One James Potter, a rich planter of Georgia, was in the habit of spending the summer season in Princeton, New Jersey, where he owned a house and establishment in which he resided five or six months in each year during the sickly season in Georgia. He was assessed in Princeton, first, for his lands and personal chattels situated there; secondly, for a poll-tax of fifty cents, and, thirdly, for two hundred thousand dollars of Camden and Amboy railroad bonds owned by him. That case turned upon the point that Potter was not an inhabitant of the State of New Jersey, and the court said that the assessment upon the real and personal estate in Princeton was legal, but not being an inhabitant, he was not liable to a poll-tax; that a temporary residence for the purpose of business or pleasure continued for days, weeks or even months, while the party's domicile is elsewhere, and while he has no intention of becoming a citizen of that State, did not constitute him an inhabitant, and that it was perfectly immaterial for this purpose, whether he made his temporary residence in his own dwelling, with his domestic establishment and retinue about him, or as a mere lodger in the house of another.

As to the railroad bonds, the turning point was the same. The court said the revenue act applied only to the inhabitants

of the State, and that the act must be limited in its operation exclusively to property owned by inhabitants of the State. The chief justice, from whose opinion the counsel for appellee quotes, does not use the term "resident," and properly too, because the statute had exclusive reference to inhabitants. The other cases cited are not on the point of residence, as connected with a liability to the taxing power.

The case of *The City of St. Paul* v. *Merritt*, 7 Minn. 258, only decides that under their law, a non-resident was not subject to the tax imposed upon bonds and notes due him. The statute of Minnesota makes no provision for taxing credits or moneys under the control of an agent as does ours, and expressly limits the power to be exercised upon the owners residing in the district.

We can perceive on the facts, no essential difference between this case and that of *Frost* v. *Brisben*, 19 Wend. 11 ; and *Bartlett* v. *The City of New York*, 5 Sandf. 44 ; and *Douglas* v. *The Mayor*, etc., 2 Duer, 110. Here the domicile or home of the defendant was at Bath in the State of New York, and his business residence at Pekin, in the county of Tazewell, in this State, one-third of the year. His only business was carried on at Pekin. While there attending to it, he could not be considered as residing at Bath in New York. In conformity with the definition given of the term " residence," that of the defendant is established. Here was a settled, fixed abode at Pekin, an intention manifested to remain there permanently, at least for a time, for business purposes. When at Bath he resided there for a time, and so at Pekin when he was assessed. His residence there was just as certain during the business season as it was in Bath, to which place he repaired on the approach of the hot and sickly season. It is true, he had but one home or domicile, but he had two residences, the one Pekin while he was there, the other Bath, his home and domicile when he chose to go to it.

Suppose Ira and Charles Davenport had been assessed on this property in New York, and they had shown that it was capital invested in loans in this State under the control of their

agent here, what would be the decision of the courts of New York on such facts? That is answered by the case of *The People ex rel. Hoyt* v. *The Commissioners of Taxes*, 28 N. Y. 224, cited by appellants. In that case, the relator residing in the city of New York, was assessed in respect to capital invested in business in New Orleans, and in respect to chattels on his farm in New Jersey. The court held the assessment was erroneous, and cite approvingly the case of *Wilkey* v. *The City of Pekin*, 19 Ill. 160, quoting what is there said to be the general rule, that personal property follows the person of the owners, but municipal corporations have no power to protect property not within their corporate limits, nor can they render any equivalent for the right of taxing such property, and there is no propriety in the application of this rule to them for the purposes of revenue, and that it was evident the legislature intended to confine the power of taxation to property actually within the territorial jurisdiction. This property assessed, as well as the defendant, were in this category. The case of *Catlin* v. *Hull*, 21 Verm. 152, is also on the point, and sustains the view we have taken.

We have no doubt the appellee, in legal contemplation, was a resident of Pekin when assessed, and amenable to our revenue laws. The decree of the Circuit Court enjoining the collection of the taxes against him was erroneous, and must be reversed, and a decree entered dissolving the injunction and dismissing the bill.

*Decree reversed.*