## D. S. Jenks v. C. C. Rounds.

1. NON-RESIDENCE—*Under the Attachment Act.*—Absence from the State, with a fixed abode in another place, with the intention of remaining permanently away, at least for a time, for business or other purposes, will constitute a non-residence within the meaning of the attachment act, even if there is an intention of returning at the expiration of the sojourn in the foreign State; but a casual or transitory absence from the State will not constitute such a non-residence.

2. SAME—*Absence Must be Protracted.*—The absence must be so protracted as to amount to a prevention of legal remedies by ordinary process; and in determining whether one has ceased to be a resident, it is important to know whether the purpose of his absence is such as to admit of the acquisition of residence elsewhere.

3. SAME—*Transient Visits.*—Something more than the transient visit of a person for a time at a place is necessary to make him a resident; there must be a settled, fixed abode; an intention to remain permanently, at least for a time, for business or other purposes, is required to constitute a residence within the legal meaning of the term.

4. DOMICILE—*Not Necessarily a Residence.*—The domicile of a citizen may be in one State or Territory and his actual residence in another.

Attachment.—Appeal from the Circuit Court of Kendall County; the Hon. GEORGE W. BROWN, Judge, presiding. Heard in this court at the October term, 1899. Reversed and remanded. Opinion filed February 1, 1900.

C. A. DARNELL and JOHN FITZGERALD, attorneys for appellant.

J. STUART WILSON and BENJ. F. HARRINGTON, attorneys for appellee.

MR. JUSTICE DIBELL delivered the opinion of the court.

On May 4, 1898, D. S. Jenks began this suit upon a

promissory note, by suing out an attachment against C. C. Rounds. its maker, on the ground that Rounds was not then a resident of Illinois. A writ of attachment was issued and levied upon real estate. Defendant pleaded, traversing the allegation of non-residence. A jury found the issue for defendant. Judgment for costs was entered against plaintiff, and he appeals.

From 1865 to 1897 Rounds lived at Plano, in Kendall county. In 1897 he lived in two rooms, up stairs, in a house which he owned; was a widower, and about seventy-five years old. He had grandchildren and a widowed daughter-in-law, living in Nebraska. On May 19, 1897, he left the house in charge of his tenant, reserving his two rooms, and leaving his cooking utensils and part of his furniture therein, and went to Nebraska. Nine days later, on May 28, 1897, he executed a deed of his Plano home to Mattie W. Lloyd, though the deed was not recorded in Kendall county till May 19, 1898. On November 24, 1897, he married Mattie W. Lloyd, and thereafter lived with her at her mother's home in Nebraska till March 1, 1898, when he. and his wife moved upon his wife's eighty-acre farm in Nebraska, where they have ever since lived, and still live. He then took charge and control of that farm, intending, he testified, to return to Illinois in the fall of 1898, after the close of that farming season. His wife, during that summer, broke her arm and became paralyzed, and her mother became sick and came to live with them, and they remained upon the farm. Rounds never returned to this State, except to attend the trial of this cause, in April, 1899, and then testified he was still in charge of his wife's farm in Nebraska, and expected to remain there during the year 1899. He went to Nebraska for his health, intending to return at some time. In the fall of 1897 he refused to vote in Nebraska, on the ground that he wished to keep his permanent residence at Plano.

Was Rounds, on May 4, 1898, a non-resident of Illinois, within the meaning of the attachment act? What constitutes non-residence under that act is thus stated in Wells v. Parrott, 43 Ill. App. 656:

"Absence from the State and having a fixed abode in another place, with the intention to remain permanently, at least for a time, for business or other purposes, will constitute non-residence, even if there be an intention to return at the expiration of the time of residence in the foreign State. Casual or transitory absence from the State will not constitute non-residence within the meaning of the attachment act. The absence must be so protracted as to amount to a prevention of legal remedy by ordinary process; and in determining whether one has ceased to be a resident it is important to know whether the purpose of the absence was such as to admit or require the acquisition of residence elsewhere."

To the same effect is Barron v. Burke, 82 Ill. App. 116. Both follow Board of Supervisors v. Davenport, 40 Ill. 197, where, in determining the meaning of the term "persons residing in the State" in the revenue law, the court adopted the language of a New York decision, as follows:

"The transient visit of a person, for a time, at a place, does not make him a resident while there. Something more is necessary to entitle him to that character. There must be a settled, fixed abode, an intention to remain permanently, at least for a time, for business or other purposes, to constitute a residence within the legal meaning of that term. * * * The domicile of a citizen may be in one State or Territory and his actual residence in another." Wells v. People, 44 Ill. 40; Drake on Attachment (3d Edition), Section 39, et seq.

When Rounds originally went to Nebraska, it may be he did not at once become a non-resident of Illinois. He went for his health, and we may assume, also, to visit his grandchildren at the home of his deceased son, and he intended to return, and reserved the rooms previously occupied by him in his home at Plano. His first step to divest himself of his status as a resident of Plano was deeding his home there to Mattie W. Lloyd. Then followed his marriage to her about six months later. Then he and his wife took up their abode with her mother. On March 1, 1898, he moved upon and took charge and control of his wife's farm in Nebraska, at the beginning of the farming season, intending to remain there in charge of that farm at least till the

close of that farming season in the fall of 1898. When he moved to that farm March 1, 1898, with that purpose, he certainly acquired a fixed abode, intending to remain there, for that season at least, for business purposes, and thereby became a non-resident of this State under the attachment act, notwithstanding his intention to return to this State at some future time. When this attachment was sued out on May 4, 1898, Rounds had been absent from the State fifteen days less than a year, had acquired a fixed abode for the time being in Nebraska, and had entered upon a business there, the performance of which would require him to remain there till at least the close of the farming season in the fall of 1898, and he then intended to remain there at least till after that time. In our judgment the absence from this State which had already occurred, and the further continuing absence already arranged for and intended, was so protracted as to amount to a prevention of legal remedy by ordinary process in the courts of this State, and made Rounds a non-resident of this State under our attachment act.

Any other rule would enable a citizen of this State, owing debts, and owning plenty of property located here to pay them, to practically prevent the collection of his debts by any process the courts of this State could give him. By removing to another State or country, intending to remain either for a fixed period or indefinitely, but with a purpose to return at some definite or indefinite future time, he would place himself beyond the reach of a summons from the courts of this State, and yet, according to the contention of appellee, attachment could not issue, and his creditors would be without legal remedy. It will not do to say his creditors could follow him to the State or country of his new abode and sue him there and get judgment, for not only would this be a hardship against which our attachment act was intended to relieve, but it might be that his property out of which the judgment could be made would remain here (and the proofs show such is the present case), and when judgment was obtained in the foreign jurisdic-

tion, suit could not be brought upon that judgment here because of the inability to get service of ordinary process here. So that a debtor could thus avoid for a long and indefinite period the collection of his debts out of his property situated in this State, unless the attachment act applies. We are of opinion that the undisputed proofs entitled plaintiff to a verdict under the attachment issue.

This is entirely different from the question to which many of appellee's authorities are directed, whether Rounds is still a citizen of this State, has a domicile in Plano, and can vote there when he returns. It was held in Hayes v. Hayes, 74 Ill. 312, that " actual residence is not indispensable to retain a domicile after it is once required." The distinction between residence and domicile is also indicated in Cooper v. Beers, 143 Ill. 25. But under the attachment act, as interpreted in the cases above referred to, a person can not be a resident of Illinois after he has acquired a settled and fixed abode in another State or country, with the intention of remaining permanently for a time, for business or other purposes.

The instruction offered for the plaintiff was properly refused. It was too broad. It also stated the law upon subjects which the jury were not required to determine.

The judgment is reversed and the cause remanded for a new trial.