## ALLIS VS. JEFFERSON COUNTY.

| 34 | 307 |
| 80 | 282 |

1. STATUTE CONSTRUED: *Appropriation of taxes by the county court.*
Section seven, of the act of March 18, 1879, limiting the appropriation of taxes by the county court, to "ninety per cent. of the taxes for that year," means, of the taxes levied upon the assessments of property and to be extended upon the tax-books; and does not prevent the court from also appropriating the revenue accruing to the county from fines, forfeitures and licenses.

APPEAL from *Jefferson* County.

Hon. X. J. PINDALL, Judge.

*N. T. White,* for appellant.

*Attorney General, contra.*

EAKIN, J. On the eighteenth of October, 1879, appellant, a citizen and taxpayer of Jefferson county, applied, by petition to the circuit court, and obtained a writ of *certiorari* to the county court to bring up the proceedings had in the levy of the taxes, and making appropriations for the county.

Upon the return of the writ, it appeared that the county court, composed of the judge and a quorum of the justices, convened on the sixth of October, 1879, the time prescribed by law.

A committee of its members, appointed for the purpose, reported to the court the assessed value of the real and personal property of the county, at $3,841,825, and that the county had, for the year ending in July, 1879, derived a revenue of $6,000 from fines, forfeitures and licenses, and the further sum of $858.54 from land redemptions; and that there was reason to expect that these items would be increased for the ensuing year. They further reported

deficits of former allowances, on which no scrip had been issued, for want of appropriations, to the amount of $6,294.97, not estimating a bridge-tax deficit of $600, which had been provided for. The unadjusted claims against the county, including jurors' and witnesses' certificates, were reported at $13,945.17. This report was approved, and the committee discharged.

Afterwards, the court, upon the recommendation of a committee on appropriations, levied a tax of five mills on the dollar, on the assessed value of property in the county, estimated to produce the sum of $19,209.13; ninety per cent. of which, to-wit: the sum of $17,288.22, was, by order of the court, divided into separate sums, and appropriated to various heads of expenditure for the county, exhausting the whole. Concerning these appropriations, no question is made, nor is there any of other levies and appropriations for special purposes made at the same time.

At a subsequent day of the term, a quorum of justices being still in attendance, it was ordered that out of the fund estimated to accrue from fines, forfeitures, licenses and penalties, certain appropriations be made; which appear to be for deficits in the several offices of the circuit and county clerks, the sheriff and assessor; deficits for printing; and the payment of special county judges; also, appropriations for payment of justices of the peace in criminal cases; for bridges; refunding money erroneously paid into the county treasury; payment of the coroner, associate justices, jurors' and witnesses' certificates—in all, $6,400.07.

These last appropriations, the petitioner sought to quash, on the ground that the county court had exhausted its power of making appropriations, with the use of the ninety per cent. on the product of the five mills tax. The circuit court dismissed the petition, and the case is brought

here on appeal. Meanwhile, upon bond being here given and approved, this court, as ancillary to its appellate and supervising power, has granted a temporary supersedeas of the order of the county court, to prevent the issuance of any warrants under the last appropriations, until the matter may be determined.

The constitution of 1874, Art. VII, sec. 28, provides that: "The county courts shall have exclusive original jurisdiction in all matters relating to county taxes, * * * the disbursement of money for county purposes, and in any other case that may be necessary to the internal improvement and local concerns of the respective counties." This is a very broad, general and unrestricted jurisdiction, within the scope and purview of the subject matters indicated. It was not intended to leave it so. To guard against abuse, it was provided by section 30 that: "The justices of the peace of each county shall sit with and assist the county judge in levying the county taxes, making appropriations for the expenses of the county *in the manner to be prescribed by law.*" A majority of the justices of the county were made necessary to a quorum, and the general assembly was required to regulate by law the manner of compelling their attendance. By this section, it is plain that the extraordinary court, organized for the special purpose of levying taxes and making appropriations, was subject to the control of the general assembly, as to the manner of levying taxes and making appropriations whenever the law-making power should see fit to exercise it, and to that extent. Acts authorizing the raising of county revenue, are essential to give any validity to said thirtieth section; but, the revenue being authorized, it would seem to follow that there would be in the court a general power of appropriating it to any county pur-

pose, unless restrained or otherwise specially directed by law. This power must necessarily be implied, otherwise enormous revenues might accumulate from year to year in the county treasuries, while the counties themselves would remain impotent to discharge their proper functions in sustaining the general government of the state.

After several imperfect acts, which it is not important to notice, the legislature, by act of March 18, 1879, endeavored to make a system for the guidance of the county court in levying taxes and making appropriations.

Sec. 7 provides: "The court shall specify the amount of appropriation, for each purpose, in dollars and cents; and the total amount of appropriation for all county or district purposes, for any one year, shall not exceed ninety per cent. of the taxes levied for that year." Further on, in section 10, it is provided that: "The taxes levied for county purposes, hereinbefore named and specified, shall be extended upon the tax-books under the general head of county expenses," etc., thus plainly indicating the intention of the legislature to use the terms "taxes levied" in the strict sense of those made upon assessments of property and entered in the tax-books. Forfeitures, fines and penalties are in no true sense taxes levied, and licenses are only so in a general sense, being rather the result of police regulations made ancillary to purposes of revenue.

The policy of the act seems to be to check extravagance in appropriations with reference to contracts, rather than to encourage the accumulation of funds in the county treasuries. The particular limitation of ninety per cent. was, obviously, to provide that the taxes collected might meet the appropriations, by allowing for ten per cent. for loss or delinquency. It was not to retain ten per cent. of each year's levy in the treasury as a sinking fund. Such a

thing might incidentally result, and make other legislation necessary. What is meant here is, that the act does not seem to have been framed with that object.

Nor does it seem that the legislature had in view, in this section, the revenue to arise from fines, forfeitures, penalties or licenses. These have no connection with, nor relation to, the amounts levied on property. They are wholly independent. They belong to the county for county purposes, and it would be absurd in the legislature to prevent the counties from using them, because the whole amount to be used would exceed ninety per cent. of the levied taxes. There is no tie between the subject matters, nor any conceivable policy making one control the other.

The statute, on this point, means simply to say, that, of the taxes levied and to be extended on the tax-books for county purposes, not more than ninety per cent. shall be appropriated for that year. A very wholesome provision, inasmuch as perchance, and very probably, not more than that might be collected. This does not prevent the county from using revenues undoubtedly her own, upon a proper appropriation by a full court.

There was no error in the judgment of the circuit court, dismissing the petition upon *certiorari*. Let the same be affirmed, and the supersedeas from this court be discharged.