## KERWIN v. CALDWELL.

### Opinion delivered October 15, 1906.

1.  COUNTY LEVYING COURT—LIMIT OF APPROPRIATIONS.—Kirby's Digest, § 1500, inhibiting the levying court from appropriating for county purposes more than 90 per cent. of the county tax levy, does not inhibit the county court from appropriating all of the county funds derived from any source after reserving ten per cent. of the current tax levy. (Page 282.)

2.  COUNTY HOSPITAL—POWER OF COUNTY COURT TO CONTRACT FOR.—Where the levying court made an appropriation for the purpose of building a county hospital, the county court was authorized to make a proper contract for an amount exceeding the appropriation. (Page 283.)

3.  SAME—POWER TO PURCHASE GROUND.—Where a county had no suitable ground on which to erect a county hospital, an appropriation by the levying court for the purpose of building a county hospital necessarily carried the authority to procure ground therefor. (Page 283.)

Appeal from Jefferson Chancery Court; *John M. Elliott,* Chancellor; reversed.

*W. D. Jones, S. M. Taylor* and *W. F. Coleman,* for appellants.

1. The statute means that, of the taxes levied and to be extended on the tax books for county purposes, not over ninety per cent. shall be appropriated for that year; but this does not prevent the levying court from considering other revenue of the county in making appropriations. 34 Ark. 307.

2. The power to purchase the necessary site is incident to the power to construct and maintain a county building. 7 Am. & Eng. Enc. Law (New), 933, 934, note 1.

1. The statute requires that the total amount of appropriations for all county and district purposes for any one year shall not exceed ninety per cent. of the taxes levied for that year. Kirby's Digest, § 1500. The term "taxes levied" was intended by the Legislature to be taken in the strict sense of those made upon assessments of property and entered in the tax books. 34 Ark. 310. The proof is undisputed that the levying court did not undertake to appropriate any of the cash in the treasury for the building of the county hospital; hence the appropriation was illegal because the court had appropriated more than ninety per cent. of the taxes levied for that year.

2. There was no appropriation for the purpose of purchasing land upon which to build the hospital. Hence the county court was without authority to authorize the commissioners to select the ground upon which to build it, and to purchase the same, etc. Kirby's Digest, § 1502; 54 Ark. 645; 61 Ark. 74.

HILL, C. J. This is a taxpayer's injunction against the county judge and other officers to prevent the erection of a county hospital. The validity of the hospital plan rested upon an appropriation of the county court appropriating five hundred dollars for the building and maintenance of a hospital. It was alleged that a hospital building to cost $35,000 to $40,000 was about to be erected on a site to cost about $4,500.

The correctness of these statements is challenged, but it is unnecessary to go into these collateral issues. The primary question is the validity of the five hundred dollar appropriation. If it was valid, the hospital plan was valid, and could, within proper lines, be carried out; if it was not valid, the whole project was illegal, and should be restrained.

The chancellor took the latter view, and the county judge and other officers appeal.

The point of decision in the chancery court is thus stated in the decree: "The court finds the facts to be that the revenue arising from a five-mill county general tax levied would be $61,780.75, and that the total appropriation made by the levying court at that term and prior to the appropriating five hundred dollars for the building of a county hospital, amounted to $77,700, which is in excess of the ninety per cent. of the taxes levied for that year. The court further finds from the testimony that the levying court did not undertake to appropriate any of the money that was on hand in the treasury at that time, and that the appropriation at the time for the building of the county hospital was therefore illegal because the court had appropriated more than ninety per cent. of the taxes levied for that year."

Adding the $500 for hospital, the total appropriations were $78,200; as stated, the revenue from the five-mill tax was $61,780.75, and in addition thereto there was cash in the county treasury subject to appropriation of $27,035.60, and there was an estimated revenue of $13,100 from liquor licenses, $2,147.76 from fines in justice of the peace courts and numerous other minor sources of income.

The appropriations were general; that is, not specific as payable out of any given source of revenue. The chancellor evidently interpreted section 1500 of Kirby's Digest as inhibiting the county court from appropriating for county objects more than 90 per cent. of the county tax levy unless the appropriation was expressly made out of some other source of revenue than the five-mill tax, for instance, from the revenue derived from liquor license, or other distinct source.

The true construction of section 1500 was given by Mr. Justice EAKIN in *Allis* v. *Jefferson County*, 34 Ark. 307. These excerpts are peculiarly applicable here:

"The policy of the act seems to be to check extravagance in appropriations with reference to contracts, rather than to encourage the accumulation of funds in the county treasuries. The particular limitation of ninety per cent. was, obviously, to provide that the taxes collected might meet the appropriations, by allowing for ten per cent. for loss or delinquency. It was not to retain ten per cent. of each year's levy in the treasury as a sinking fund. * * * Nor does it seem that the Legislature had

in view, in this section, the revenue to arise from fines, forfeitures, penalties or licenses. * * * They belong to the county for county purposes, and it would be absurd in the Legislature to prevent the counties from using them, because the whole amount to be used would exceed ninety per cent. of the levied taxes. There is no tie between the subject-matter, nor any conceivable policy making one control the other. The statute, on this point, means simply to say that, of the taxes levied and to be extended on the tax books for county purposes, not more than ninety per cent. shall be appropriated for that year. A very wholesome provision, inasmuch as perchance, and very probably, not more than that might be collected. This does not prevent the county from using revenues undoubtedly her own, upon a proper appropriation by a full court."

In the case at bar, after reserving the ten per cent. of the current tax levy, there were ample funds belonging to the general revenue of the county and subject to general appropriation to render valid all of the $78,200 appropriated by the county court. The statute is not an inhibition upon proper county appropriations of the available county funds on hand, and it is a mere limitation on using more than 90 per cent. of one class of the county funds, towit, the amount receivable from the tax levy.

Appellee insists that the appropriation does not include a power to purchase land for the site of the hospital, but contemplates the use of land owned by the county. The appropriation was in this language: "Be it resolved by the levying court now assembled that we do hereby appropriate the sum of $500 for building and maintaining said county hospital; same being owned by Jefferson County for all the people." In *Fones Hardware Co.* v. *Erb,* 54 Ark. 645, and *Weigel* v. *Pulaski County,* 61 Ark. 74, it has been decided that it requires the concurring judgment of the levying court and the county judge to make these contracts for public buildings. When the levying court makes an appropriation for the purpose, a proper contract exceeding the appropriation may be made by the county judge. See *Bowman* v. *Frith,* 73 Ark. 523. The appropriation is the assent to the plan, the groundwork, the basis for the subsequent contract. Unless there is something to affirmatively show otherwise, authorization for the building and maintenance of a public

institution would necessarily include necessary grounds for it to rest upon. It may be that the county has suitable ground and place, as in the case of replacing a burned building; but, in the absence of any showing of that kind, the authorization to start a new enterprise and build and maintain it would necessarily carry authorization to procure ground for it. See 7 Am. & Eng. Enc. Law (2 Ed.), pp. 933 and 934, cases and notes. A subsequent order of the county court stated that the court had no suitable grounds of its own for this purpose, and authorized purchase of grounds.

Reverse and remand.