Honorable Mike Wilson State Representative 1202 Main Street P. O. Box 5269 Jacksonville, AR 72076
Dear Representative Wilson:
This letter is in response to your request for an Attorney General's Opinion regarding several questions which you have posed pertaining to county appropriations. Since you have asked several questions, I will deal with each of them separately in the order in which you have asked them.
(1) You have asked for an opinion on the scope of the term "revenue" as used in Ark. Stat. Ann. 17-411 (Repl. 1980), which provides that a county may not appropriate more than 90 percent of its anticipated revenues for any particular year. It is my opinion that the term "revenue" is not limited to taxes but also includes other forms of income such as federal revenue sharing funds, grants, carryover funds and other related items.
Act 77 of 1879 provided that in each county in Arkansas, the county court should meet at a certain time of the year to levy taxes and make appropriations for the expenses of the county for the coming year. The act required the county clerk, sheriff and treasurer to submit reports indicating the amount of revenue received during the preceding 12 months and the sources of that revenue, and also an accounting of the various appropriations made during that preceding 12 months and the amount of money actually expended for those appropriated items. Section 7 of Act 77 of 1879 contained the earliest version of Ark. Stat. Ann. 17-411, stating that the county court should specify the amounts of money appropriated for each particular purpose, and that "the total amount of appropriations for all county or district purposes for any one year shall not exceed ninety percent (90%) of the taxes levied for that year."
In Allis v. Jefferson County, 34 Ark. 307 (1879), the Arkansas Supreme Court held that the term "taxes levied" in Section 7 of Act 77 should be considered in its strict sense to mean those taxes levied upon assessments of property and entered in the tax books. The Court stated as follows:
 The policy of the act seems to be to check extravagance in appropriations with reference to contracts, rather than to encourage the accumulation of funds in the county treasuries. The particular limitation of ninety percent was, obviously, to provide that the taxes collected might meet the appropriations, by allowing for ten percent for loss or delinquency. It was not to retain ten percent of each year's levy in the treasury as a sinking fund. . . .
Nor does it seem that the legislature had in view, in this section, the revenue to arise from fines, forfeitures, penalties or licenses. These have no connection with, nor relation to, the amounts levied on property. They are wholly independent. They belong to the county for county purposes, and it would be absurd in the legislature to prevent the counties from using them, because the whole amount to be used would exceed 90 percent of the levied taxes. There is no tie between the subject matters, nor any conceivable policy making one control the other.
The statute, on this point, means simply to say, that of the taxes levied and to expended on the tax books for county purposes, not more than 90 percent shall be appropriated for that year. A very wholesome provision, inasmuch as per chance, and very probably, not more than that might be collected. This does not prevent the county from using revenues undoubtedly her own, upon a proper appropriation by a full court. 34 Ark. at 310-311. See also Kerwin v. Caldwell, 80 Ark. 282, 96 S.W. 1058, 1059 (1906) ("The statute is not an inhibition upon proper county appropriations of the available county funds on hand, and it is a mere limitation on using more than 90 percent of one class of the county funds, to wit, the amount receivable from the tax levy."); Fussell v. Mallory, 97 Ark. 465, 134 S.W. 631, 632 (1911) ("In making appropriations the cash on hand not appropriated and the revenue arising from other sources than the taxes levied may be taken into consideration, . . . "). In Thompson v. Mayo, 135 Ark. 143,204 S.W. 747 (1918), the Arkansas Supreme Court held that the 90 percent appropriation limitation pertained only to current and ordinary expenses for the County for the year and did not include expenditures for extraordinary expenses such as building a new courthouse.
In all of the above-discussed cases, the Arkansas Supreme Court strictly construed the term "taxes levied" to be limited to taxes collected from the assessments on property within the county. The county could only appropriate 90 percent of the amounts projected to be collected from these taxes, but the Court found that the Legislature did not intend to place a 90 percent limitation on the use by the county of funds from additional sources, such as fines, forfeitures or penalties.
Section 7 of Act 77 of 1879 was amended by Section 2 of Act 128 of 1973. This revised version of Ark. Stat. Ann 7-411 states: ". . . the total amount of appropriations for all county or district purposes for any one (1) year shall not exceed ninety percent (90%) of the anticipated revenues for that year." (emphasis added.) Section 2 of Act 128 repealed all laws and parts of laws in conflict therewith. The threshold consideration in construing the purpose and meaning of a statute is to ascertain and give effect to the intent of the legislature. Refunding Board of Arkansas v. Bailey, 190 Ark. 558, 80 S.W.2d 61 (1935); Duty v. City of Rogers, 255 Ark. 309, 500 S.W.2d 347 (1973); Shinn v. Heath, 259 Ark. 577, 535 S.W.2d 57 (1976). By changing the wording in the statute from "taxes levied" to "anticipated revenues," the General Assembly intended that there were some forms of revenue available to the county in addition to taxes collected from assessed property which should also be subject to the 90 percent limitation on appropriations.
It is my opinion that some modern sources of income available to the counties, such as revenue sharing funds or turn back funds, are similar in nature to the taxes levied upon assessed property and should be included in the term "anticipated revenues" in the 90 percent limitation statute. These are new types of revenues which were not in existence when the 1879 Act was passed. Although federal revenue sharing funds or various forms of turn back funds may be promised to a county, the specific amounts of these funds actually received by the county may depend upon the actual amount of revenue collected by the federal government or other entity prior to the county receiving its share. Consequently, the inclusion of these funds within the 90 percent appropriation limitation in order to allow a 10 percent margin for delinquency or uncollectability would seem to fit within the long-standing intent of the General Assembly for the 90 percent rule in the first place, and also within the interpretations of the 90 percent appropriation statutes by the Supreme Court. On the other hand, pursuant to the previously discussed line of cases from the Arkansas Supreme Court, there still may be certain known funds, such as those resulting from fines, forfeitures or penalties, which the county might be able to use in full in addition to the amounts of revenue subject to the 90 percent appropriation limitation. It appears that each type of revenue would have to be judged on its own individual merit, and it is not possible for me to give an opinion containing a list of every type of money available to the county which might fall within or without the term "anticipated revenues." I do, however, feel that revenue sharing funds and other funds which are based upon collection of revenue by some level of government would fall within the same category as taxes levied on property assessed within the county.
Finally, I do not feel that the 90 percent limitation would harm the county in its ability to use funds from grants issued by the federal government or other entities, where the granting entity requires that the grant money must be used in its totality for a particular purpose. Section 17-411 states that the total amount of appropriations for all county or district purposes for the year shall not exceed 90 percent of the anticipated revenues for that year. This statute does not say that each particular type of revenue received by the county may only be used up to 90 percent. Consequently, if a particular grant states that 100 percent of that money must be used in that year, the county could use all 100 percent of that particular money for that particular purpose, and yet still manage its overall appropriations so that the total appropriations for the county for that year would not exceed 90 percent of the total anticipated revenue for that year.
(2) You have also asked whether an order must be issued by the county court or the county judge to effect expenditures of county money or rather, does the county judge's signature constitute the approval required by state statute. It is my opinion that under the current law, the county judge must issue some form of written authorization in order to approve the disbursement of county funds or enter into a contract on behalf of the county.
Act 52 of 1965 established a purchasing procedure for counties in the State of Arkansas. The various provisions of this Act, as subsequently amended, set out the rules concerning which commodities must be purchased through the competitive bidding process, and the procedures whereby the county may enter into contracts and approve expenditures pertaining to those commodities which are competitively bid. Section 9 of Act 52 of 1965, codified as Ark. Stat. Ann. 17-1609 (Repl. 1980), stated that no contract subject to the statutory purchasing procedure could be entered into, nor any purchase actually made under one of those contracts, until the contract or purchase had been approved by an order of the county court. Pursuant to Amendment 55 to the Arkansas Constitution, the General Assembly passed Act 742 of 1977, which, as amended, sets forth the respective duties of the county judge and the county court. Ark. Stat. Ann. 17-3901(A)(2) and (B)(2) grants the county judge the power to authorize and approve the disbursement of appropriated county funds. Section 17-3901(B)(2) provides that the county judge shall have the authority to enter into necessary contracts or other agreements to obligate county funds and approve expenditures of county funds appropriated in the manner provided by law. Inasmuch as this later act gives the county judge the power to enter into contracts, there is no longer the requirement that the county court must approve a contract before it goes into effect. This is further evidenced by Section 17-3903, which states that certain powers which are not vested in the county judge pursuant to Amendment 55 shall continue to be exercised by the county court. The approval of contracts is not listed as one of these powers to continue to be exercised by the county court.
Under the old system, in a contract which was required to be competitively bid, since the county court was the entity which had to approve the contract and since the county court consisted of several persons, this approval was accomplished by an "order." Section 17-3901, which gives the county judge executive powers pursuant to Amendment 55 to now enter into necessary contracts, does not state that the judge has to issue a formal "order" in any particular form. However, it is clear that pursuant to 17-3901, the county judge must issue some form of written authorization before any disbursement of appropriated county funds may be accomplished. Furthermore, the judge would have to issue some form of written documentation in order to effect a contract between the county and another entity. This would be the case both for contracts which must be competitively bid pursuant to Act 52 of 1965 as amended, and for other contracts entered into by the county.
(3) You have requested a clarification regarding what steps must be taken when the county judge designates a representative to authorize and approve disbursement of appropriated county funds pursuant to Ark. Stat. Ann. 17-3901(B)(2). It is my opinion that if an individual is properly designated by the county judge as his representative, and if all of the requirements outlined in the above-referenced statute are met, there is no requirement for any further act on the part of the county court or county judge in order to effect the authorization and approval of disbursement of appropriated county funds by the designated representative. However, it should be noted that pursuant to 17-3901(B)(2), the county judge himself/herself is the only person who has the authority to actually enter into contracts on behalf of the county. There is no provision for designating a representative to enter into contracts.
(4) You have asked two questions regarding the status of the Pulaski County Comptroller and whether claims information must be kept in the office of the county clerk or the county comptroller. First of all, you have asked whether the office of Pulaski County Comptroller is currently established pursuant to State legislation. It is my opinion that the Office of Pulaski County Comptroller is legislatively established.
As stated in your request, the Office of the Pulaski County Comptroller was created by Act 646 of 1919, such office to continue in existence for a period of 18 years. There was no subsequent act which specifically re-created the Office of Pulaski County Comptroller. However, the Office of Pulaski County Comptroller has been continually staffed through the years and has performed various financial duties for the County throughout those years. It is obvious that, in fact, the Office of County Comptroller does exist. Furthermore, Act 164 of 1947 and Act 334 of 1949 both appropriated funds for various offices in counties with populations in excess of 120,000, including the Office of Comptroller. Pulaski County was included within those counties in excess of [$]120,000 population pursuant to both of those acts. In light of all of the above, it is my opinion that the Office of Pulaski County Comptroller has been legislatively established.
Ark. Stat. Ann. 17-720 (Repl. 1980), states that the provisions in Act 139 of 1961 which pertain to the retention of claim dockets by county clerks, shall not apply to counties who establish an office of comptroller pursuant to legislative act. Consequently, assuming that Pulaski County's Comptroller is established pursuant to legislative enactment, the duties required in the pertinent portions of Act 139 of 1961 may be performed by the comptroller rather than the county clerk. You have also posed the following question; if the Pulaski County Judge has appointed the Pulaski County Comptroller as his designated representative to approve authorized expenditures of county funds pursuant to Ark. Stat. Ann. 17-3901, and if the financial data which would otherwise have to be kept in the office of the county clerk pursuant to Act 139 of 1961 is actually kept by the Pulaski County Comptroller as part of his voucher system, even if one should argue that the Pulaski County Comptroller is not in existence pursuant to legislative enactment, would the authority granted him as the county judge's designated representative under 17-3901 supercede the requirements of Act 139 of 1961. In my opinion the answer is no. Pursuant to the applicable provisions of Act 139 of 1961, those portions of that act shall not be applicable only in the event that a county has established a county comptroller's office pursuant to legislative enactment. If it is determined that the Pulaski County Comptroller does not exist pursuant to legislative enactment there would be no exemption from the claims information retention requirements placed on the county clerk. The fact that the county judge has appointed the county comptroller as his designated representative to authorize and approve appropriated expenditures would have no effect on the separate Act which sets out requirements stating which office shall retain information regarding claims asserted against the county.
The foregoing opinion, which I hereby approve, was prepared by Deputy Attorney General Jeffrey A. Bell.