Krone v. Cooper.

ker, 25 *Ark.*, 518; *McCoy v. Lemons, Hempst.*, 216; *Ward v. Todd*, 103 *U. S.*, 327.

Affirmed.

## KRONE V. COOPER.

1. RESIDENCE: DOMICILE: *Meaning of*

"Domicile is of broader meaning than residence." It includes residence: but actual residence is not indispensable to retain a domicile after it is once acquired. It is retained by the mere intention not to change it.

2. ATTACHMENT: *Residence of defendant*:

"Residence" in the attachment laws generally, implies an established abode, fixed permanently for a time, for business or other purposes, although there may be an intent existing all the while to return at some time to the true domicile. An actual resident in this state, having a domicile in another, cannot be attached here as a non-resident.

APPEAL from *Lawrence* Circuit Court.

Hon. R. H. POWELL, Circuit Judge.

*U. M. & G. B. Rose,* for appellant.

The dwelling place of Krone's family was not necessarily his domicile. The domicile of the family follows that of the head. Absence from the state does not make one a non-resident, however protracted, if he has the *animo revertendi.* 29 *Ark.*, 280; 13 *Mass.*, 501; 5 *Bush*, 671; 19 *Wend.*, 11. "Residence" and "domicile" are not synonymous. One may have his residence in one state and his domicile in another. Residence within the

Krone v. Cooper.

meaning of the attachment laws, is the place where a man remains the greater part of his time, and where personal service can be had upon him. See *Drake on Attachment, Sec.* 58 ; *note to Frost v. Brisbin,* 32 *Am. Dec.,* 427 ; 30 *Grat.,* 718 ; 40 *How. Pr.,* 260 ; 54 *Miss.,* 308 ; 1 *Seld.,* 422 ; 75 *N. C.,* 21 ; 37 *N. J. L.,* 492 ; 19 *Md.,* 82.

*W. F. Henderson,* for appellee.

The testimony preponderates that Krone not only was a resident of Missouri, but that his domicile was there. He had at best but a commercial residence in Arkansas. He was liable to be proceeded against as a non-resident. *Drake on Attachment, Sec.* 67 ; 10 *La. An.,* 726 ; 38 *Mo.,* 384 ; 68 *N. Y.,* 370 ; 37 *N. J. Law,* 492 ; *Drake on Attach ment, Secs.* 65, 66 *and note* 2.

Krone & Boas were partners, and jointly and severally liable on the note, and the firm property was properly levied on. 8 *Ga.,* 532 ; *Drake on Attachment, Sec.* 66.

COCKRILL, C. J. Cooper sued Krone, Oppenheimer and Boas on a promissory note, and sued out an attachment against Krone & Boas. There was a judgment *in personam* against all the defendants, and the attachments were sustained. The question chiefly litigated in the court below, and discussed by counsel here, is whether Krone, who alone appeals, was a non-resident of this state at the time the attachment was sued out.

1. RESI-DENCE. DO-MICILE: Meaning of. The terms " resident " and " non-resident " used in the provisions of our statute governing attachments, have never been defined by this court, and the provisions themselves do not profess to determine the meaning that was intended in their use. No exact definition of these terms, to fit all cases, is practicable, for the reason that their meaning varies with the subject matter to which

they are applied.  The meaning of the word citizen, in the homestead act of 1852, was restricted to that of " resident" merely, (*McKenzie v. Murphy*, 24 *Ark.*, 155,) and the purpose and policy of laws relating to homesteads, the right of the elective franchise, and other subjects, show that "residence " is there to be understood in the enlarged sense of " domicile." So that what is meant by their use in any given instance must be determined according to all the light that the context affords.  The definition of domicile is itself, in a measure, uncertain, but it is agreed that it has a broader meaning than residence.  It includes residence.  Actual residence, however, is not indispensable to retain a domicile after it is once acquired.  It is retained by the mere intention not to change it.  *Story Conft. Laws, Sec.* 44.

No word, it is said, is more nearly synonymous with domicile than home, and it is generally agreed that a man can have but one home or domicile, but that he may have more than one place of residence.  The domicile of a citizen may be in one state and his actual residence in another. *Savage v. Scott*, 45 *Iowa*, 130; *Board v. Davenport*, 40 *Ill.*, 197.

Drake, in his work on attachments, section 58, says : " In determing whether a debtor is a resident of a particular state, the question of his domicile is not necessarily involved, for he may have a residence which is not in law his domicile."

Under the attachment law of Missouri, residence and domicile are construed to mean about the same thing, and any one not domiciled in that state, may be proceeded against by attachment; but this seems to result from the phraseology of the statute.  See *County v. Moberly*, 59 *Mo.*, 238.

In other states the distinction between residence and

domicile is taken, and the word "resident" in this connection, is generally construed to mean an actual resident, merely, without reference to the place of domicile·

Thus, where a mother left the state of her domicile and accompanied her children into another state, with the intention, however, of returning when their education was completed, she was held liable to the process of attachment in the state of her domicile, as being a nonresident of that state. *Alston v. Newcomer*, 42 *Miss.*, 186.

In *Wheeler v. Cobb*, 91 *N. C.*, 21, the defendant left his home to discharge the duties of a federal office in another state. He always claimed the place of his old home as his domicile, and occasionally visited it. The court drew the line between domicile and residence, and sustained an attachment against him in the state of his domicile.

The same rule was applied in a case where the defendant was located in another state than that of his domicile for several years attending to a law suit, although he continued to maintain his home in his absence as before. *Haggard v. Morgan*, 1 *Selden*, (5 *N. Y.*) 422.

*Frost v. Brisbill*, 19 *Wend.*, 11, reviews the previous New York cases, construing the meaning of the word "resident" in the statutes regulating the rights and remidies of debtor and creditor; and it is there said that they all virtually decide that actual residence without regard to the domicile of the defendant, was within the contemplation of the statutes. The same case holds that to make one a resident within the meaning of these statutes, "there must be a settled, fixed abode, and intention to remain permanently, at least for a time, for business or other purposes."

In *Long v. Ryan*, 30 *Gratt.*, 718, the case presented was that of a person domiciled in Washington city, who

removed to Virginia with the intention of remaining there nine months, or such additional time as might be required to complete certain contracts for building parts of a railroad. He rented his residence in Washington and removed the greater part of his family with him, but without the intention of abandoning his domicile, and during the time of his work, he always claimed Washington as his place of residence, and declared his intention of returning there as soon as his contracts were completed. Upon this state of facts the court considered him a resident of Virginia, and held he was not liable to be subjected to the process of attachment given by statute against non-residents.

In *Morgan v. Nunes*, 54 *Mis*s., 308, the defendant was proceeded against as a non-resident debtor in Mississippi. The proof showed that he was a ship-master from New York, where he had left his family, to engage in trade from ports on the Mississippi sound. He stated to a witness, before the attachment, that his residence was in New York, but he, himself, testified that he came to Mississippi to remain permanently, and that he had voted there. He did not keep house, and was in the county where he claimed residence only when the vessel was in port, but was connected in business with parties there. The court thought he was a resident.

We may conclude from the cases, that in contempla- **2. Residence under the attachment laws.** tion of the attachment laws generally, residence implies an established abode, fixed permanently for a time for business or other purpose, although there may be an intent existing all the while to return at some time or other to the true domicile ; but so difficult is it found to provide a definition to meet all the varying phases of circumstance that the determination of this question may present, that the courts say, that, subject to the general rule, each case must be decided on its own state of facts.

The evidence here, aside from the appellant's testimony, shows that at the time the attachments were sued out, and for seven or eight years prior thereto, appellant was carrying on a mercantile business in the town of Walnut Ridge, in Arkansas, in partnership with his codefendant, Oppenheimer, and also had been engaged in a railroad contract thereabouts with Boas; that his family resided in St. Louis, Missouri, and that he was in the habit of speaking of St. Louis as his home. He told one witness about fifteen months before suit, that he lived or resided in St. Louis, and refused at one time to vote in a municipal election at Walnut Ridge, giving as a reason that his residence was in St. Louis. He had no place of business and owned no real estate, except in Walnut Ridge. He spent about three-fourths of his time there, sometimes keeping house, sometimes boarding at a hotel. His family occassionally visited him at Walnut Ridge, and it is shown that he had visited his family in St. Louis, though whether his visits were often or protracted the evidence does not disclose. The appellant himself testified that all of his time was devoted to the firm business above mentioned, either at Walnut Ridge or in purchasing goods abroad for the concern, which seems to have prospered. He also testified that he came to Arkansas from Illinois, and that his residence had been in this state ever since; that he had offered to vote in Arkansas, but was rejected on account of prejudice, as he supposed; that he had never registered nor voted in St. Louis; and that his wife lived in St. Louis with his children for the purpose of educating them there. He left Walnut Ridge on Saturday, stating that he was sick and was going home, and his effects were attached on the following Monday. After a few days absence he returned to his business as ususl.

The appellant's testimony, taken alone, would estab-

lish, not only an actual residence, but a domicile in this state. His honor, the circuit Judge, who determined the facts upon the testimony, might well have concluded, as he doubtless did, that appellant's acts and previous statements about his domicile, contradicted his testimony in that behalf. Admitting, however, that the testimony clearly shows that appellant's domicile was in St. Louis, we find nothing sufficient to show that his actual residence was not in Arkansas. The burden of showing this was upon the appellees. It was not shown that appellant's regular place of abode, his dwelling place, was in St. Louis. If it had been, the bare fact that he spent a great part of his time in Arkansas attending to business interests there, would not have been a sufficient answer. A mere presence, or temporary sojourn, in this state, whether on business or pleasure, unaccompanied by the intention of remaining for a length of time that would give some idea of permanency, would not constitute residence within the meaning of the attachment laws, though by permanency we are not to understand a determination to stay always. Such residence, when established, may be lost by departure from the state with the intention of not returning, or of taking up an abode elswhere; but a mere temporary absence from the state, without this intention, would not render one amenable to the attachment law as a non-resident. See *Mandel v. Peet,* 18 *Ark.,* 236.

If appellant's temporary absence from his place of residence afforded a ground for attachment against his propery, it must be found in some other subdivision of the attachment provision. No error as to the judgment *in personam* is assigned. The judgment sustaining the attachment must be reversed and the case remanded with directions to grant the appellant a new trial as to that issue.

(Supplemental opinion on motion to modify judgment.)

APPEAL: *Supersedeas bond*: *Judgment in Supreme Court.*

When an appellant desires to supersede an order of the circuit court, sustaining an attachment of his property, and not also the personal judgment against him, he should give bond and issue supersedeas as provided in section 1299, Mansfield's Digest. If he execute bond as provided in section 1295, then, upon affirmance of the personal judgment, the Supreme Court will render judgment for it against the appellant and his sureties in the bond, although it reverse the order sustaining the attachment.

COCKRILL, C. J. Krone prosecuted an appeal from a judgment sustaining an attachment and awarding execution for $876.59 against him. We reversed the case as to the attachment issue and affirmed the judgment *in personam*. The clerk failed to enter a judgment here against the sureties in the supersedeas bond, and the appellee has moved for such judgment.

If the appellant had desired to supersede only that part of the judgment relating to the attachment proceedings, he might have done so by framing his bond in accordance with Section 1299, of Mansfield's Digest. He did not see fit to do this, but caused a bond to be executed to stay all proceedings under the judgment. The appellee has thus been prevented from having execution for his money, the only means of enforcement left him, inasmuch as the appellant had released the attached property from the grasp of the order by giving bond for that purpose.

The sureties in the supersedeas bond have aided in this delay, and have, in effect, made themselves parties to the suit and agreed to pay any judgment that this court may render or order to be rendered against the

Krone v. Cooper.

appellant.    *White v. Prigmore,* 29 *Ark.,* 208; *Mansfield's Dig., Sec.* 1295; *Hobbs v. King* 3 *Metc.,* (*Ky.*) 249.

The fact that the order sustaining the attachment was reversed, does not affect the sureties' liability to pay that part of the judgment which is affirmed.  The case of *Rodgers v. Brooks,* 31 *Ark.,* 194; (*S. C.,* 30 *Ib.,* 612); is in point.  A decree had been rendered against Rodgers for money he owed, and the amount was charged as a lien on his lands.  On appeal the decree was reversed as to the lien, and a decree entered here against Rodgers and the sureties in his appeal bond, for the money found due.

The appellee is entitled to his judgment here under the statute, against the appellant and his sureties and it is so ordered.