JARRELL v. LEEPER.

Opinion delivered October 15, 1928.

*Feazel & Steel,* for appellant.

*Steel & Edwards,* for appellee.

HART, C. J., (after stating the facts). The principal ground relied upon for a reversal of the judgment is that the defendant was not a nonresident of the State of Arkansas at the time the attachment was sued out. The question of residence is a mixed one of law and fact. If, as contended by the defendant, the undisputed evidence shows that he was a resident of the State of Arkansas at the time the attachment was sued out, the finding of the court on the attachment branch of the case must be reversed.

What constitutes a nonresident within the meaning of our attachment law was considered and thoroughly discussed in the case of *Krone* v. *Cooper,* 43 Ark. 547. The court recognized that the words "resident" and "nonresident," as used in our statute relating to attachments, had never been defined by this court, and that no exact definition, which will fit all cases, is practical. The court recognized that domicile has a broader meaning than residence, and includes residence. In discussing the question the court said:

"No word, it is said, is more nearly synonymous with domicile than home, and it is generally agreed that a man can have but one home or domicile, but that he may have more than one place of residence. The domicile of a citizen may be in one State and his actual residence in

another. *Savage* v. *Scott*, 45 Iowa 130; *Board* v. *Davenport*, 40 Ill. 197.

"Drake, in his work on attachments, § 58, says: 'In determining whether a debtor is a resident of a particular State, the question of his domicile is not necessarily involved, for he may have a residence which is not in law his domicile'."

At the conclusion of the discussion, Chief Justice COCKRILL said:

"We may conclude from the cases that, in contemplation of the attachment laws generally, residence implies an established abode, fixed permanently for a time, for business or other purpose, although there may be an intent existing all the while to return at some time or other to the true domicile; but so difficult is it found to provide a definition to meet all the varying phases of circumstances that the determination of this question may present, that the courts say that, subject to the general rule, each case must be decided on its own state of facts."

The subject was also thoroughly discussed and the same conclusion reached by the Supreme Court of Minnesota in *Keller* v. *Carr*, 40 Minn. 428, 42 N. W. 292. Mr. Justice Mitchell, speaking for the court, said:

" 'Residence' and 'domicile' are not to be held synonymous. 'Residence' is an act. 'Domicile' is an act coupled with an intent. A man may have a residence in one State or country, and his domicile in another, and he may be a nonresident of the State of his domicile, in the sense that his place of actual residence is not there. Hence the great weight of authorities hold—rightly so, as we think—that a debtor, although his legal domicile is in the State, may reside or remain out of it for so long a time, and under such circumstances as to acquire, so to speak, an actual nonresidence within the meaning of the attachment statute."

Bearing in mind the principles of law above announced, we now come to a review of the evidence on the attachment branch of the case. To sustain the attach-

ment, the plaintiff testified that, at the time he entered into the contract for the sale of a hotel in which the defendant had an interest, at Haynesville, Louisiana, the defendant told him that his home and family were there. He said that he wanted to move his family from Haynesville to Austin, Texas, for the purpose of educating his children. R. W. Grady entered into a contract with the defendant for the exchange of property owned by him in Sevier County, Arkansas, for his interest in the hotel at Haynesville, Louisiana. During the course of their negotiation for the exchange, Grady was a guest of the defendant at the hotel, and sat at a family table with the defendant.

On the other hand, the defendant was a witness for himself on this branch of the case. According to his testimony, his residence was Nashville, Howard County, Arkansas, and he had lived there for more than a year at the time he began negotiations for the exchange of his interest in the hotel at Haynesville, Louisiana, with Grady, for certain lands which he owned in Sevier County, Arkansas. He was associated in the real estate business with Will Gaines at Nashville, Arkansas, and occupied an office with him. Witness admitted that he had been living in and out of Haynesville, where his family was located, for four years. He moved his family from there to Austin, Texas, in September, 1927. He had lived in Nashville at a hotel for more than a year before the transaction involved in this lawsuit had begun. He would make trips from Nashville to the Rio Grande Valley, in Texas, for the purpose of selling lands there. Sometimes he would be gone on these trips four or five days. At Christmas, 1927, he visited his family at Austin, Texas, for a few days. During the rest of the time he lived at the hotel in Nashville, Howard County, Arkansas, and had never voted either in the State of Arkansas or the State of Louisiana. He owned tracts of land in both Howard and Sevier counties. In the contract which is the subject-matter of this litigation he described himself as "M. A. Jarrell, from Haynesville, Louisiana."

Witness told all his customers that his residence was at Nashville, Howard County, Arkansas. He had some old stationery that gave Haynesville, Louisiana, as his place of business; but, after coming to Arkansas, when he used it he marked that out and gave Nashville as his place of business. His testimony in respect to his real estate operations was corroborated by his associate in business at Nashville, Arkansas.

Under the facts shown by the record, the court should have found that the defendant was a resident of the State of Arkansas. When he spoke to the plaintiff about his home being in Louisiana, he evidently referred to his place of domicile. He had lived at a hotel in Nashville, Howard County, Arkansas, for more than a year before the transaction involved in this lawsuit was had. He had accumulated various tracts of land in both Howard and Sevier counties. During all this time he lived at a hotel in Nashville. He was only absent when he would leave the State for the purpose of showing customers land in the Rio Grande Valley, in the State of Texas, and he would be gone only some four or five days at a time. He had a known place of abode, and service of summons could have been had upon him at his place of residence in Nashville, Howard County, Arkansas. His absence from the State for short spaces of time on business could not in any sense be said to affect his residence or to prevent service of summons from being had upon him. Even if it could be said that the court was justified in finding that his residence was at Haynesville, Louisiana, in the early part of September, 1927, the undisputed testimony shows that he had moved his family from there to Austin, Texas, some time in September, 1927, several months before the attachment in this case was sued out. Consequently he could in no sense be any longer a resident of Haynesville, Louisiana. The undisputed evidence also shows that he never attempted to acquire any residence at Austin, Texas. He did not buy any home there, and only moved his wife and children there for the purpose of educating the children. He remained at Nashville, Howard County,

Arkansas, where his headquarters for his real estate business were, and continued to reside at the same hotel. Under these circumstances we think the undisputed testimony shows that the defendant was a resident of the State of Arkansas on the 28th day of December, 1927, when the attachment was sued out by the plaintiff.

Therefore the court erred in sustaining the attachment on the ground that the defendant was a nonresident of the State of Arkansas. For this error the judgment must be reversed, and it is conceded that the court would have no jurisdiction to try the case on the merits unless the attachment could be sustained and thereby give the court jurisdiction in the matter. Hence it is not necessary to discuss or to determine the assignments of error in the trial of the case on its merits.

For the error in sustaining the attachment the judgment will be reversed, and the cause remanded for further proceedings according to law.