## Davis DUTY v. CITY of ROGERS, Arkansas and BENTON COUNTY, Arkansas

73-87                                   500 S.W. 2d 347

Opinion delivered October 22, 1973

Appellant, Pro Se.

*J. Wesley Sampier,* for appellees.

CARLETON HARRIS, Chief Justice. On January 1, 1971, appellant, Davis Duty, assumed his duties as Municipal Judge of the City of Rogers, appellee herein. At that time, the salary for the office was the legally authorized maximum of $4,800 per year. On March 30, 1971, Act 456 of the 1971 General Assembly (Ark. Stat. Ann. § 22-704.1 [Supp. 1971]) became law. The act authorized a maximum salary for various municipal judges in the state. Pertinent portions of this act provide as follows:

> "The annual salary of the Judge of the Municipal Court situated within the city or town hereinafter designated shall be retroactive to and from and after January 1, 1971, as follows:"

Here follows a long list of cities, the county in which said city is located, and the salary authorized for the

various municipal judges. The maximum salary provided for Rogers is $7,500 per year. However, there is a subsequent paragraph as follows:

"Provided, that the salaries of the judges of the municipal courts of Bentonville, Rogers and Siloam Springs, Benton County, as now established by law may be increased in such amounts not to exceed the maximum salaries authorized herein, only as approved by the Quorum Court of the County and the governing body of the respective cities."

On November 2, 1971, the City of Rogers enacted Ordinance No. 682 which increased the municipal judge's salary from $4,800 per year to $6,000 per annum, retroactive to January 1, 1971, and also established a salary of $7,500 per annum, to become effective on January 1, 1972. Duty was paid the $1,200 retroactive pay (difference between $4,800 and $6,000) for the year 1971; from January 1, 1972 through June 30, 1972, at which time appellant resigned from the office, he was paid at the rate of $7,500 per year, or the amount of $3,750 for the six months served. Appellant instituted suit against the city and county for $1,500 (the difference between the $6,000 paid in 1971 and the $7,500 which he claimed to be due under the provisions of Legislative Act 456). Appellees demurred, said demurrers being sustained, and appellant declining to plead further, the complaint was dismissed with prejudice. From the judgment so entered, appellant brings this appeal. For reversal, it is asserted that the court erred as a matter of law in finding that the salary increase (to $7,500) granted to appellant was not automatically retroactive to January 1, 1971.[1] We proceed to discuss this contention.

Appellant, of course, relies upon the first sentence of the legislative act, quoted in this opinion, providing

---

[1] It is also asserted that there being no genuine issues of material fact to be decided, the court erred as a matter of law in denying appellant's motion for summary judgment. Under the view taken herein, this point becomes moot, and for that matter, the denial of a motion for summary judgment is not an appealable order. See *Widmer* v. *Ft. Smith Vehicle & Machinery Corporation*, 244 Ark. 971, 429 S.W. 2d 63.

that the salary granted shall be retroactive, and he points out that the city ordinance set the salary at $7,500 (though this amount was not the original increase but only became effective in the year 1972). Appellant recognizes that the proviso, with reference to the authorization of $7,500, also herein quoted, appears to modify the sentence relied upon, and he spends some time in his breif quoting grammatical authorities, citing Fernald, *English Grammar Simplified* (Rev. Ed. 1963). The citation deals with restrictive and non-restrictive clauses, and attention is called to the fact that there is only one comma in the disputed portion of the provision, such comma being located before the word "only". We need not discuss this argument for we have held many times that the primary rule in the construction of statutes is to ascertain and give effect to the intention of the Legislature. *Koser* v. *Oliver,* 186 Ark. 567, 54 S.W. 2d 411. We have also held that the true meaning of the General Assembly must be ascertained from a consideration of the whole act. *Koser* v. *Oliver,* supra; *Bailey* v. *Abington,* 201 Ark. 1072, 148 S.W. 2d 176; and *Berry* v. *Gordon,* 237 Ark. 547, 376 S.W. 2d 279. Still further, in *Koser,* we pointed out that when the intention of the General Assembly is manifested. "The court will not permit punctuation to control, but will disregard punctuation or will repunctuate, if necessary, to give effect to what otherwise appears to be the proper and true meaning of the statutes. ***Whenever such intention can be discovered, it ought to be followed with reason and discretion in the construction of the statute, although such construction seems contradictory to the letter of the statute." In *Bailey,* we said:

"It often happens that the true intention of the lawmaking body, though obvious, is not expressed by the language employed in a statute when that language is given its literal meaning. In such cases, the carrying out of the legislative intention, which, as we have seen, is the prime and sole object of all rules of construction, can only be accomplished by departure from the literal interpretation of the language employed. Hence, the courts are not always confined to the literal meaning of a

statute; the real purpose and intent of the Legislature will prevail over the literal import of the words. When the intention of a statute is plainly discernible from its provisions that intention is as obligatory as the letter of the statute, and will even prevail over the strict letter. The reason of the law, as indicated by its general terms, should prevail over its letter, when the plain purpose of the act will be defeated by strict adherence to its verbiage. It is frequently the case that, in order to harmonize conflicting provisions and to effectuate the intention and purpose of the lawmaking power, courts must either restrict or enlarge the ordinary meaning of words. The legislative intention, as collected from an examination of the whole as well as the separate parts of a statute, will prevail over the literal import of particular terms, and will control the strict letter of the statute, where an adherence to such strict letter would lead to injustice, to absurdity, or contradictory provisions."

Appellant's argument is simply that the General Assembly set his salary at $7,500 per year and that Act 456 declared such salary to be retroactive to and from January 1, 1971; that when the salary was increased to that figure, he became entitled to that amount. Appellant agrees that there could be no argument if neither the city nor quorum court acted at all, leaving the salary at $4,800. Obviously, there would be no argument if the city and county quorum court had approved the salary increase to $6,000, and left it at that figure. We cannot agree with appellant for we think that the language of the act, beginning with the word "Provided", makes it very evident that the Legislature only intended for the Municipal Judge of Rogers to receive any amount *up to* $7,500, the amount being determined by the city and quorum court of the county. There could be no other reason for the insertion of that clause. We consider that it is clearly shown that the General Assembly intended for a municipal judge to receive whatever amount, up to $7,500, the city and county desired and could afford to pay. This is certainly the logical view to take. Perhaps the revenues of the city

would support a salary increase of $1,200 for 1971, but not salary increase of $2,700 for that year;[2] however, anticipated revenues would support the $7,500 salary beginning in January, 1972. The unsoundness of appellant's contention can be demonstrated by a hypothetical illustration. Let us say that the General Assembly passes no further salary act for the next several years; that the City of Rogers and the County were not financially able to increase the salary to $7,500 until January 1, 1976. Under appellant's view, he could then contend that he was due retroactive pay from January 1, 1971 until January 1, 1976, a total of five years—and, if appellant's present contention is sound (that he is due retroactive pay of one year), there is no reason why the hypothetical contention would not be sound.

Affirmed.

---

[2]It might even be that a larger salary increase could have caused the city or county to run afoul of provisions of Amendment 10 to the State Constitution.