Ben SHINN et ux *v.* Richard HEATH,
Director of the Department of Finance
and Administration of the State
of Arkansas

75-284                                   535 S.W. 2d 57

Opinion delivered April 12, 1976

578

*Chambers & Chambers,* by: *Melvin T. Chambers,* for

appellants.

*James R. Cooper, H. Ray Hodnett, Robert G. Brockman,* and *James R. Eads Jr.,* for appellee.

J. FRED JONES, Justice. This is an appeal by Ben Shinn and his wife from an adverse decree of the chancery court on a petition they filed for the return of $6,461.65 in income taxes assessed for 1967 through 1970 and paid under protest. The question on this appeal is whether the appellants were residents of Arkansas and liable for income tax under the Income Tax Act of 1929, Ark. Stat. Ann. § 84-2001, et seq. (Repl. 1960).

Under § 84-2003 an income tax is imposed upon every individual resident of Arkansas and § 84-2002 (9) and (10) defines resident and nonresident as follows:

"(9) The word 'resident' means natural persons and includes for the purpose of determining liability to the tax imposed by this act upon or with reference to the income of any taxable year, any person domiciled in the State of Arkansas and any other person who maintains a permanent place of abode within the State and spends in the aggregate more than six [6] months of the taxable year within the State.

(10) The word 'nonresident' when used in connection with this act, shall apply to any natural person whose domicile is without the State of Arkansas, or who maintains a place of abode without the State, and spends in the aggregate more than six [6] months of the taxable year without the State."

The appellants were born and reared in Arkansas and the substance of their testimony was to the effect that for the past several years they have been engaged in building and selling motels, primarily in the State of Texas. It was their contention that their residence for tax purposes followed their occupation, in that they lived in the motels they would construct until the motel was sold and they would then move on to a new location and build and sell another motel. It was

their contention, and they so testified, that they maintained a mailing address in Magnolia, Arkansas, and would return to Magnolia periodically to pick up their mail from a post office box they maintained in Magnolia. All of their relatives lived in and around Magnolia. Some of the motels were sold before they were finished and in other instances the motels were built and operated by the appellants until they were sold.

Mr. and Mrs. Shinn filed Arkansas income tax returns for 1967 and gave their home address as "Post Office Box 338, Magnolia, Columbia County, Arkansas." In 1968 the Shinns filed a "nonresident (resident for part of year)" income tax return in Louisiana for 1967 and showed their home address as Box 338, Magnolia, Arkansas. Their 1968 and 1969 federal and state income tax returns showed the same address. On January 19, 1975, Mr. Shinn registered to vote in Arkansas and on his affidavit for registration he designated his home address as 916 Highland, Magnolia, and after designating his school district and voting precinct in Magnolia, he stated he had lived at that address for eight years.

According to Mr. and Mrs. Shinns' testimony, most of their time was spent in and around Tyler, Texas. They said that in 1969 they contemplated building a home in Tyler, but the motel business took them to other parts of Texas and they never did buy a lot or build a home in Tyler. They said they owned a house in Magnolia from 1962 until they sold it in 1970, but they never did live in the house. They said the house in Magnolia was unfurnished; that the house was under construction for about 18 months while they were in and out of Magnolia; that it was never furnished and that they sold it unfurnished. They said that since that time, however, [apparently since 1970] they have built a home in Magnolia.

Mr. Shinn said the reason they did not furnish the original house in Magnolia was that a banker from whom he borrowed money in Tyler, Texas, insisted that they settle down in Tyler, and they were thinking of doing so. He said he had been building and selling motels in Texas since 1959; that he maintained an office in a trailer on the job site while a motel was under construction and he would move it from job to job in various towns where he constructed motels.

Both Mr. and Mrs. Shinn had Arkansas driver's licenses which they had kept and renewed through the years. Mr. Shinn said he would be unable to pass a driver's examination in Texas. Mr. Shinn said he was registered to vote in Arkansas for the purpose of obtaining a liquor permit in connection with a motel he had built in Texarkana, Arkansas, while living across the state line in Texas. He said that while they kept the house in Magnolia from 1967 to 1970, he had a next-door neighbor look after it and mow the lawn. He said he never did vote in Arkansas and had no intention of doing so when he executed his voter registration affidavit. Mr. Shinn said he did not know what address J. W. put on his income tax returns.[1] Mr. Shinn then testified in part as follows:

"Q. Mr. Shinn, while you were in Texarkana, did you intend one day to return to Magnolia where you say your relatives and . . .

A. No, I really didn't. I loved Texas and I like it and still like it, and I really intended to stay in Texas, but I didn't. But, anyhow, Texas, one time I thought we would live in Texas because all our business was there.

Q. But you did, in fact, change your mind and return to Arkansas?

A. I will have to say we are in Arkansas now, uh huh.

THE COURT: Did you tell anybody in Texas you were from Arkansas or did you hold yourself out to be from some place else?

A. If I was in Greenville, Texas, I am from Greenville, Texas. In Tyler, from Tyler, Texas. Wherever I was living, at that time that is where I was living."

Mrs. Shinn testified that from January to May, 1967, they were in Manny, Louisiana; from May 1 to September 21, 1967, they were in Arkansas and were unemployed during that time. She said that from September, 1967, to June, 1968,

---

[1] The returns show that J. W. Powell of Magnolia, Arkansas, made out the returns.

they were in Sherman, Texas; that following vacation in 1968 they were in Tyler, Texas, from August, 1968, to August, 1969; that from August, 1969, to December, 1969, they were in Greenville, Texas; that the motel jobs they had in Greenville and Tyler overlapped and that while they were operating the motel in Tyler before they sold it, they began construction on one in Greenville. She said that following their vacation in 1970, they were in Alexandria, Louisiana, from February to July; that they were on vacation in August, 1970, and were in Texarkana from September, 1970, to March, 1971. She said they were building a motel in Texarkana, Arkansas, but were living in Texarkana, Texas. She said they lived in furnished apartments much of the time and owned no furniture.

On cross-examination Mrs. Shinn said that when they built the house in Magnolia in 1962, they thought they would live there. She said they kept the house and did not rent it until 1970 when they sold it. She said she also had an Arkansas driver's license and had purchased it in Arkansas when she began to drive and had maintained it ever since. Referring to the house built in Magnolia in 1962, Mrs. Shinn testified as follows:

"Q. Did you ever intend to come back and live at that house?

A. When you say ever, that is a long time. That covers an awful lot of time. But as we became more and more busy in our work in other parts of the country, we decided that since we were not using the house, we would sell the house.

Q. You sold the house in 1970 after you had owned it since 1962?

A. I believe we sold the house, I think, in 1969."

We deem it unnecessary to discuss the testimony further for the reason that this case actually turns on the statutory definition of who is a resident for tax purposes under the above statute. The appellants have designated the points on which they rely for reversal as follows:

"I. That section 84-2002, sub-sec. 9 of Arkansas statutes annotated does not include the appellants as being residents of the State of Arkansas for the time or years involved herein.

II. That section 84-2002, sub-sec. 10 of Arkansas statutes annotated excludes the appellants as 'residents' of the State of Arkansas for and during the time, or years, involved herein.

III. Exclusive of the definition contained in statutes involved the appellants are not subject to the taxes for the years involved for the following reasons:

a. They were not residents of the State of Arkansas at the times involved.

b. They were residents of the State of Texas during the times involved.

IV. The appellants are not restricted from changing their domicile or residence.

V. The appellants are entitled to a 'Commercial Domicile' for income tax purposes [under] sub-sec. B of § 84-2055, Ark. Statutes Anno."

In defining the word "resident" within the meaning of the statute here involved, the appellants rely on the general definition as set out in *Shelton* v. *Shelton*, 180 Ark. 959, 23 S.W. 2d 629 (1930), and *Jarrell* v. *Leeper*, 178 Ark. 6, 9 S.W. 2d 778 (1928), rather than as specifically defined in § 84-2002 (9) (10), *supra*. The *Shelton* case involved the appointment of administrator and the question was whether the administrator was a resident of the county in which he was appointed. The statute under which the appointment was made, Crawford & Moses' Digest, § 5, recited in part as follows:

" 'Letters testamentary and of administration shall be granted in the county in which the testator or intestate resided; or, if he had no known residence. . . . ' "

This court quoted from *Krone v. Cooper,* 43 Ark. 547 (1884), in the *Shelton* case, as follows:

> " 'We may conclude from the cases that, in contemplation of the attachment laws, residence implies an established abode, fixed permanently for a time, for business and other purposes, although there may be an understanding all the while to return at some time or other to the principal domicile; but so difficult is it found to provide a definition to meet all the varying phases of circumstances that the determination of this question may present, that the courts say that, subject to the general rule, each case must be decided on its own state of facts.' See also *Jarrell v. Leeper,* 178 Ark. 6, 9 S.W. (2d) 778."

In *Shelton* we found that the trial court correctly held that the decedent *resided* at Brinkley, Monroe County, at the time of his death, and that the trial court did not err in holding the letters void. In *Shelton* we cited other cases in which the words "resident" and "residence" were defined for the various purposes pertaining to the case involved and in doing so we said:

> "In *Smith v. Union County,* 178 Ark. 540, 11 S.W. (2d) 455, this court held, in construing the statute providing for the listing of property for taxation, (§ 9890, C. & M. Digest): 'Residence, as used in § 9890, Crawford & Moses' Digest, means the place of actual abode, and not an established domicile or home which one expects to return to and occupy at some future time.' The same construction was placed upon the word 'residence' under the taxation laws as had been given it under the attachment laws of the State."

If the appellants in the case at bar were relying on the definition of residence for purposes of listing property for taxation, as set out in *Smith v. Union County,* and cited in *Shelton,* the statute applicable to *Smith v. Union County* clearly distinguishes the meaning in that case from the definition applicable in the case at bar. Crawford & Moses' Digest, § 9890, provided as follows:

"Every person of full age and sound mind shall list the real property of which he is the owner, situated in the county in which he *resides*. . . . " (Our emphasis).

In *Krone* v. *Cooper, supra,* cited in *Shelton,* the action was an attachment on a judgment *in personam* and in that case this court further said:

"The terms 'resident' and 'non-resident' used in the provisions of our statute governing attachments, have never been defined by this court, and the provisions themselves do not profess to determine the meaning that was intended in their use. No exact definition of these terms, to fit all cases, is practicable, for the reason that their meaning varies with the subject matter to which they are applied.

\* \* \*

. . . A mere presence, or temporary sojourn, in this state, whether on business or pleasure, unaccompanied by the intention of remaining for a length of time that would give some idea of permanency, would not constitute residence within the meaning of the attachment laws, though by permanency we are not to understand a determination to stay always. Such residence, when established, may be lost by departure from the state with the intention of not returning, or of taking up an abode elsewhere; but a mere temporary absence from the state, without this intention, would not render one amenable to the attachment law as a non-resident."

The Civil Code pertaining to *attachments,* as brought forward in Ark. Stat. Ann. § 31-101 (Repl. 1962), simply refers to "residents" and "nonresidents" without further definition.

*Jerrell* v. *Leeper, supra,* relied on by the appellants, was also an attachment case and in that case this court said:

"What constitutes a nonresident within the meaning of our attachment law was considered and thoroughly dis-

cussed in the case of *Krone* v. *Cooper*, 43 Ark. 547. The court recognized that the words 'resident' and 'nonresident,' as used in our statute relating to attachments, had never been defined by this court, and that no exact definition, which will fit all cases, is practical. The court recognized that domicile has a broader meaning than residence, and includes residence."

The statute here involved, § 84-2002 (9) and (10), *supra,* defines a resident for tax purposes under subsection (9) as any person *domiciled* in the state of Arkansas and also any person who maintains a *permanent place of abode* within the state and spends in the aggregate more than six months of the taxable year within the state. Subsection (10) defines a nonresident as a person whose domicile is without the state of Arkansas, *or* who maintains a place of abode without the state, and spends in the aggregate more than six months of the taxable year without the state. Although the appellants contend that they were not domiciled in Arkansas, they argue that the statutory requirement of spending more than six months of the taxable year in Arkansas makes the place of their domicile unimportant. The second exclusion of subsection (10), appellants argue, "excludes those who maintain a place of abode outside of the State and spend more than six (6) months of the taxable year outside the state."

Actually the appellants failed to prove that they maintained any particular place of abode outside of Arkansas, they did *maintain* such *place of abode* in Magnolia but testified they did not abide there. In any event, to adopt the construction advocated by the appellants would put the two subsections into conflict. Subsection (9) makes "any person domiciled in the State of Arkansas" a resident. The primary rule in the construction of statutes is to ascertain and give effect to the intention of the Legislature. *Duty* v. *City of Rogers & Benton Cty.,* 255 Ark. 309, 500 S.W. 2d 347 (1973). In determining legislative intent, the courts look to the language of the whole statute or Act. *John B. May Co., Inc.* v. *McCastlain, Comm'r,* 244 Ark. 495, 426 S.W. 2d 158 (1968). In order to give effect to every part of a statute, it is the court's duty, as far as practicable, to reconcile the different provisions so as to make them consistent, harmonious and

sensible. *McLeod* v. *Santa Fe Trail Transp. Co.*, 205·Ark. 225, 168 S.W. 2d 413 (1943). To carry out the general purpose and intent of a statute, either civil or criminal, the words "and" and "or" are convertible. *Williams* v. *State*, 99 Ark. 149, 137 S.W. 927 (1911); *Pickens-Bond Const. Co.* v. *NLR Elec. Co.*, 249 Ark. 389, 459 S.W. 2d 549 (1970). Subsection (10), *supra*, can be made consistent with subsection (9) by reading the "or" which follows "state of Arkansas" as an "and." Even so, the case at bar falls within the purview of what we said in *Cravens* v. *Cook, Comm'r*, 212 Ark. 71, 204 S.W. 2d 909 (1947). In that case it was stipulated that Congressman Cravens was domiciled in Arkansas but that he maintained a place of abode in Washington and that he spent more than six months each year without the state. In rejecting his contention that he was exempt under the last clause of subsection (10), *supra*, this court said:

> "Appellant argues, however, that under the last clause (Subdivision (10) of § 14025, Pope's Digest) it must be held that appellant is a nonresident, within the meaning of the tax law, because it was stipulated that he had maintained a place of abode without the state and had spent more than six months of each year without the state.

> We cannot agree with this contention. We think the words 'place of abode' as used in this Act mean something more than a place of temporary sojourning, and that they imply a degree of permanence that did not attach to appellant's stay in Washington. This court has frequently held that 'place of abode' as used in our statute relating to service of process means a place where a person has fixed his permanent home, and that a given place may be a 'place of abode' of a party, though he may be actually absent therefrom for a long period of time. *DuVal* v. *Johnson*, 39 Ark. 182; *McGill* v. *Miller*, 183 Ark. 585, 37 S.W. 2d 689; *Shephard* v. *Hopson*, 191 Ark. 284, 86 S.W. 2d 30; *Husband* v. *Crockett*, 195 Ark. 1031, 115 S.W. 2d 882. In the last cited case we held that 'usual place of abode' is synonymous with residence.

> The stipulation shows that appellant was a resident of

Arkansas, and did not establish or maintain without the state such a 'place of abode' as would constitute him a nonresident."

We have accepted "place of abode" and "residence" as synonymous terms within the context of an insurance policy. *Central Mfr's Mut. Ins. Co. v. Friedman*, 213 Ark. 9, 209 S.W. 2d 102 (1948). But we have held that "domicile" and "residence" are not synonymous terms since "residence" denotes an act, and "domicile" denotes an act coupled with an intent. *Jarrell v. Leeper, supra.*

In Leflar, Conflict of Laws, § 10, is found the following language:

"Under the common law every person has a domicile; when any person attains his age of majority he at that moment has a domicile previously assigned to him by law. He may thereafter acquire a new domicile, but if he does not acquire a new one the old one persists. The principle manner by which a new domicile can be acquired is by physical presence at a new place coinciding with the state of mind of regarding the new place as HOME. New domicile arises instantaneously when these two facts concur."

See also Restatement (2d) of Conflicts of Laws, §§ 11-20 (1971).

In *Phillips v. Sherrod Estate*, 248 Ark. 605, 453 S.W. 2d 60 (1970), this court said:

"We have held that to effect a change of domicile from one locality or state to another, there must be an actual abandonment of the first domicile, coupled with an intention not to return to it and there must be a new domicile acquired by actual residence in another place or jurisdiction, with intent of making the last acquired residence a permanent home. *Weaver v. Weaver*, 231 Ark. 341, 329 S.W. 2d 422, and cases cited therein."

In *Charisse v. Eldred*, 252 Ark. 101, 477 S.W. 2d 480

(1972), a case involving residential qualifications to vote and run for office under an election statute, the word "residence" was treated an synonymous with "domicile" in the context of the statute, but in that case we held that the question of intent (to make a certain place one's domicile) is one of fact to be ascertained not only by the statements of the person involved, but by his conduct as well.

The chancellor in the case at bar determined that the appellants were residents of Arkansas, and that determination is sustained by evidence in the record. Although the appellants contend that they were physically located outside of Arkansas, numerous documents prepared by appellants listed Arkaneas as their address. Furthermore, appellants had Arkansas driver's licenses and they owned a house in Arkansas which they did not rent. Mr. Shinn registered to vote in Arkansas in 1970 and declared that Arkansas had been their residence for the eight previous years. The appellants lived at no place outside Arkansas with the intent, or even the stated intent, of staying there. The appellants argue that they did not *intend* Arkansas to be their residence, but in *Charisse v. Eldred, supra,* we said:

> " [T]he fact finder is not bound to accept claims of intent when the circumstances point to a contrary conclusion. * * * When acts are inconsistent with a person's declarations, the acts will control, and declarations must yield to the conclusions to be drawn from the facts and circumstances proved."

The appellants' contention that they were entitled to a "commercial domicile" for income tax purposes under Ark. Stat. Ann. § 84-2051 et seq. (Supp. 1975) is without merit. That statute applies to income "from business activity which is taxable both within and without this state." (§ 84-2056). There was no evidence in the case at bar the appellants paid any income tax in the State of Texas or that Texas even had an income tax law. See *Collins v. Skelton,* 256 Ark. 955, 512 S.W. 2d 542 (1974).

The decree is affirmed.

FOGLEMAN, J., concurs in the result; BYRD, J., dissents.